**JOHN L. BURRIS, ESQ., SBN 69888**
LAW OFFICES OF JOHN L. BURRIS
Airport Corporate Center
7677 Oakport Street, Suite 1120
Oakland, CA 94621
Telephone:  (510) 839-5200
Facsimile:  (510) 839-3882
Email:  John.Burris@johnburrislaw.com

**ADANTE POINTER, ESQ., SBN 236229**
**PATRICK BUELNA, ESQ., SBN 317043**
POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
Well Fargo Center
1901 Harrison St., Suite 1140,
Oakland, CA 94612
Tel: 510-929-5400
Email: APointer@LawyersFTP.com
Email: PBuelna@LawyersFTP.com

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| I.F., et al.,<br><br>                    Plaintiffs,<br><br>v.<br><br>CITY OF VALLEJO, et al.,<br><br>                    Defendants. | CASE NO.:  2:18-cv-00673-JAM-CKD<br><br>**PLAINTIFF R.F.'S, BY AND THRU HIS GUARDIAN AD LITEM SHENA BATTEN, SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS**<br><br>HON. JOHN A. MENDEZ<br><br>Date:          August 25, 2020<br>Time:         1:30 p.m.<br>Ctrm:        6, 14th Floor |

| Plainitiff's Undisputed Facts and Supporting Evidence | Opposing Party's Response and Supporting Evidence |
|---|---|
| 1. On February 13, 2018, at 7:40 P.M., Defendant Vallejo Police Officer Ryan McMahon first saw Decedent Ronell Foster, Jr. riding his bicycle in a circle at the intersection of Capitol Street and Sonoma Boulevard in Vallejo, CA. (Declaration of Patrick Buelna [Buelna Decl., **Ex. 1** – Deposition Transcript of Ryan McMahon ["McMahon Depo"], at pp. 107-108). | |
| 2. Defendant McMahon decided to briefly stop Ronell and educate him on bicycle safety, but had no plans to arrest him. (McMahon Depo, pp. 110-11). | |
| 3. Defendant McMahon activated his lights and siren, then put his spotlight on Ronell, but did not broadcast to dispatch he was making a traffic stop. (McMahon Depo, p. 113). | |
| 4. Defendant McMahon could not remember why he did not inform dispatch of the traffic stop. (McMahon Depo, 114). | |

| | |
|---|---|
| 5. According to Defendant, Ronell looked at him and took off northbound on Sonoma Blvd and McMahon activated his full lights and siren. (Id.) | |
| 6. Then Ronell got off the street, stopped on the sidewalk and turned around to face Defendant McMahon. (McMahon Depo, 120). | |
| 7. Ronell stood with his bike between his legs, in a bladed stance, and looking at Defendant. (McMahon Depo, 115, 117). | |
| 8. Ofc. McMahon stopped his car approximately 15 feet from Ronell. (McMahon Depo, 118). | |
| 9. Defendant McMahon introduced himself, informed Ronell that he had stopped him for "erratic driving patterns…and to come over and sit in front of [his] car." (McMahon Depo, 118-119). | |
| 10. Ronell replied, "Man, don't – stop messing with me" and rode away on his bike. (Id.) | |

| | |
|---|---|
| 11. Defendant McMahon got back in his car and began chasing Ronell in his vehicle. (McMahon Depo, 122). | |
| 12. Defendant McMahon did not turn on his body camera when he first encountered Ronell, and did not turn on his body camera when he pursued Ronell in his vehicle. (McMahon Depo, 125). However, Defendant McMahon was trained that he should activate his body camera for traffic stops, traffic violations, when the initial contal becomes adversarial and any situation that would require a recording or where the contact may lead to use of force. (McMahon Depo, 83-84). | |
| 13. Defendant informed dispatch for the first time that he was chasing a guy on a bike "just for traffic". (Buelna Decl., **Ex. 2** – Dispatch Radio, at 00:00-00:22). | |
| 14. Defendant McMahon gave no further updates to dispatch until after he shot Ronell Foster three times in the back and once in the back of the head, killing | |

| | |
|---|---|
| him. (Dispatch Radio, at 00:22-01:04; Buelna Decl., **Ex. 3** – Coroner's Report, pp. 3-4). | |
| 15. At deposition, Defendant added that he was chasing Ronell for a Cal. Pen. Code § 148 misdemeanor violation of obstructing and delaying, because he asked Ronell to come and sit in front of his car. (McMahon Depo, 123-124). | |
| 16. Defendant McMahon chased Ronell with his car until Ronell crashed his bicycle. (McMahon Depo, 134-135). | |
| 17. Defendant stopped his car and got out with his flashlight. (McMahon Depo, 137). | |
| 18. Ronell crossed the street running and Defendant claimed to see him reaching for his waistband with both of his hands. (McMahon Depo 139-140). | |
| 19. Defendant also added that he was concerned Ronell was armed because he was concealing the right side of his body behind the van earlier. (McMahon Depo, 124) | |

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
1901 Harrison St., Ste. 1140,
Oakland, CA 94612
Tel: (510) 929 - 5400

| | |
|---|---|
| 20. However, immediately after Defendant McMahon shot and killed Ronell, McMahon's fellow officers asked if Ronell had a gun, Defendant McMahon replied, "No." (Buelna Decl., **Ex. 17** – McMahon Body Worn Camera, at 2:40-2:45). | |
| 21. Defendant McMahon was trained that Vallejo Police Department discourages foot pursuits, especially when alone and into isolated areas; rather, officers should consider alternatives (such as containment and waiting for back up); and, terminating the foot pursuit altogether if the pursuit increases the safety risk to the officer or public. (McMahon Depo, 90-93). | |
| 22. Defendant was also trained that when in a foot pursuit alone that he should not attempt to overtake and confront the suspect; but rather, he should keep the suspect in sight and wait for other officers. (McMahon Depo, 94). | |
| 23. Finally Defendant was trained that he must provide constant updates to | |

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
1901 Harrison St., Ste. 1140,
Oakland, CA 94612
Tel: (510) 929 - 5400

| | |
|---|---|
| dispatch about the foot pursuit (including location and direction of travel, the reason for the pursuit, the suspected crime, and whether or not the suspect may be armed) so that the on-duty sergeant can make a determination as to whether or not the pursuit should be terminated. (Id.) | |
| 24. Defendant McMahon chased Ronell down the street alone, and pulled out his taser. (McMahon Depo, 144). | |
| 25. Despite the fact, Defendant was trained that he *should not use* his taser against an individual merely for fleeing (McMahon Depo, 72), when Defendant McMahon was 10-15 feet behind Ronell he decided to tase him in the back without any verbal warning. (McMahon Depo, 145-147). | |
| 26. Ronell kept running, but turned left. (McMahon Depo, 149-150). Ronell went down a narrow walkway between 415 Carolina Street, and Defendant McMahon followed him. (McMahon Depo, 151). | |

6

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
1901 Harrison St., Ste. 1140,
Oakland, CA 94612
Tel: (510) 929 - 5400

| | |
|---|---|
| 27. Despite his training, Defendant McMahon did not update dispatch of the foot pursuit and responding officers of his alleged concern that Ronell may have a firearm. (McMahon Depo, 158). | |
| 28. Although Defendant McMahon was trained to immediately inform fellow officers when he suspected someone may be armed, Defendant did not radio dispatch again until Ronell was dead. (McMahon Depo, 97-98). | |
| 29. Defendant McMahon caught up and pushed Ronell down the stairs in the alley. (McMahon Depo, 158-159). | |
| 30. Ronell fell down the stairs into the courtyard area where Defendant McMahon eventually shot him in the back and back of the head murdering him. (McMahon Depo, 160-161). | |
| 31. Ronell landed facedown on his chest, and Defendant McMahon straddled Ronell's back . (McMahon Depo, 161-162). | |
| 32. Defendant had a flashlight in his hands and told Ronell to stop resisting, that he | |

7

| | |
|---|---|
| was under arrest, to put his hands above his head and not reach for his waistband. (McMahon Depo, 162). | |
| 33. Defendant McMahon testified that Ronell was "[t]rying to roll, roll away from me and get up." (McMahon Depo, at 162:8-10). | |
| 34. So Defendant put one knee on Ronell's lower back, and drew his taser. (McMahon Depo, 162). | |
| 35. Ronell did not try to punch, kick or strike Defendant. (McMahon Depo, 162-163). Up to that point, everything Ronell had done was simply trying to get away from Defendant. (Id.) | |
| 36. Defendant noticed one of the taser probes from the earlier deployment was lodged in Ronell's back so he attempted to complete the circuit and tased Ronell in the back without any verbal warning. (McMahon Depo, 163-164). | |
| 37. Ronell did not scream or say stop, but continued simply trying to get away | |

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
1901 Harrison St., Ste. 1140,
Oakland, CA 94612
Tel: (510) 929 - 5400

| | |
|---|---|
| from Defendant. (McMahon Depo, 166). | |
| 38. Defendant stood up, removed the cartridge from the taser, and began pressing the front end of the taser into Ronell's arm, side and chest repeatedly tasing him in drive stun mode. (McMahon Depo, 166-167). | |
| 39. Defendant still did not turn on his body-worn camera, or radio anyone for back up. (McMahon Depo 167). | |
| 40. After being tased several times, Defendant testified that Ronell asked, "What the fuck, man? What are you doing?" (McMahon Depo, 168). | |
| 41. Ronell still had not attempted to punch him or even threaten him, even while Defendant repeatedly tased him, then Defendant started beating Ronell with his flashlight. (McMahon Depo, 168-169). | |
| 42. Defendant admitted that when he decided to beat Ronell with his flashlight the level of threat Ronell | |

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
1901 Harrison St., Ste. 1140,
Oakland, CA 94612
Tel: (510) 929 - 5400

| | |
|---|---|
| presented did not merit deadly force. (McMahon Depo, 175:2-5). | |
| 43. The flashlight Defendant used to beat Ronell was a MagLite, approximately a foot long and made of metal. (McMahon Depo, 175; Ex 4 – Flashlight Photo). | |
| 44. Defendant McMahon only recalled striking Ronell in the clavicle and arm (McMahon Depo 177:11-14), but the medical examiner and police practices expert Jack Ryan noted a large wound to the front of Ronell's head – consistent with being struck with a MagLite. (Buelna Decl., Coroner's Report, p. 3; Ex. 5 – Head Wound Photo; Ex. 6 – Police Practices Expert Jack Ryan's Rule 26 Report [Ryan Report], p. 50, ¶ 161). | |
| 45. Defendant McMahon repeatedly beat Ronell with the flashlight while he was on the ground. (McMahon Depo, 177-178). | |
| 46. Defendant McMahon testified that he intended continue to beat Ronell with | |

| | |
|---|---|
| the flashlight until he gained compliance and stopped resisting. (McMahon Depo, 179). Defendant did not warn Ronell that he would continue to beat him with a flashlight unless he complied. (McMahon Depo, 180). | |
| 47. Defendant still did not make any calls over the radio for backup either. (McMahon Depo, 180-181). | |
| 48. Defendant McMahon raised the MagLite in the air again to bring it down on Ronell and beat him further, but Ronell grasped the MagLite as it came toward him. (McMahon Depo, 182). | |
| 49. Defendant McMahon testified Ronell ripped the flashlight from him, then got up off the ground, "and was lifting the light up to like come down and…hit [him] with it." (McMahon Depo, 182-183). | |
| 50. Defendant clarified the reasons he shot Ronell testifying: Ronell had the "the flashlight above his head" (McMahon Depo, 188:7-10); and, Ronell "was | |

| | |
|---|---|
| coming at [him] with the flashlight." (McMahon Depo, 189:18-25). | |
| 51. They were "[p]oint blank range", arm's length apart. (McMahon Depo, 190). | |
| 52. Defendant McMahon described the moments before he shot: "Ronell had a bladed stance. His right foot was in front of his left and he was coming – After he grabbed my light, it was simultaneous, he was coming up and doing this motion…He's starting to come towards me with the flashlight in like a hammer first type motion." (McMahon Depo, 191:10-192:4). | |
| 53. At video deposition, Defendant McMahon acted out Ronell's actions that caused him to kill him. (Ex. 7 – Still Frame Photos from Video Deposition at 31:18, 31:19; 31:20; Ex. 8 – McMahon Video Deposition 31:15-31:20; Ryan Report, pp. 55-59). | |
| 54. In response, Defendant testified that he pulled out his gun and remembered "shooting from [his] hip and punch[ed] out" with the gun. (McMahon Depo, | |

| | |
|---|---|
| 184). McMahon recalled that his first shot struck Ronell "[s]omewhere in his front. I know because ***I know we were facing each other.***" (McMahon Depo, 186) (emphasis added). | |
| 55. Defendant reaffirmed later, that Ronell was attacking him, face to face, with a flashlight. (McMahon Depo, 201:3-7). | |
| 56. Defendant fired seven shots killing Ronell. (Id.) No gun or any other weapon was ever found on Ronell. (McMahon Depo, 216:14-16). | |
| 57. Defendant McMahon did not turn on his body-worn camera until after he shot and killed Ronell. (**Ex. 9** – Stutchman Rule 26 Report; **Ex. 10** – Stutchman Enhanced McMahon BWC, at 00:00-00:35). | |
| 58. The video evidence clearly contradicted Defendant's account and definitively proved that Defendant McMahon murdered Ronell, as Ronell attempted to flee, and Ronell never attacked Defendant; instead, Defendant cowardly shot Ronell in his back and | |

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
1901 Harrison St., Ste. 1140,
Oakland, CA 94612
Tel: (510) 929 - 5400

| | |
|---|---|
| back of his head when he fled Defendant's excessive force. (Ex. 9 – Stutchman Rule 26 Report; Ex. 10 – Stutchman Enhanced McMahon BWC, at 00:00-00:30). | |
| 59. Defendant's body-worn camera showed Defendant McMahon tasing and beating Ronell with a flashlight splitting open his head, while Ronell laid on his back, on the ground. (McMahon Enhanced BWC, 00:00-00:20). | |
| 60. Then, Defendant McMahon moved to strike Ronell with the flashlight again and Ronell blocked him, grabbed the flashlight, and rolled away from Defendant McMahon and started to get up to run away. (McMahon Enhanced BWC, 00:20-00:30; Ryan Report, 59-68; Ex. 11 - Stutchman Still Frames 702-918). | |
| 61. Ronell was on his hands and feet and, Defendant McMahon had his firearm aimed at Ronnell's back. (Id.) | |

| | |
|---|---|
| 62. As Ronell stood up to run away, Ronell dropped the flashlight and Defendant McMahon had his firearm aimed at Ronell's back. (Id. ) | |
| 63. After Ronell had dropped the flashlight and was turning and beginning to run away, Defendant McMahon shot Ronell seven times in his side, back and back of his head. (Id.) | |
| 64. Ronell collapsed into the bushes from the seven shots in the direction that he was moving (i.e. away from Defendant McMahon). (Id.) | |
| 65. The medical examiner determined that there were seven gunshot wounds. Ronell suffered a fatal gunshot wound with an entry in the back, left side of Ronell's head, passed through the brain and stopped in his right temple, moved left to right, back to front, which is consistent with being shot while turned away from Defendant and crouched/falling (**Ex. 3, 12, 18**). | |

| | |
|---|---|
| 66. Ronell suffered a fatal gunshot wound with an entry into Ronell's left mid back and exiting from his chest that moved left to right, back to front and up, which is consistent with being shot while turned away from Defendant and crouched/falling (**Ex. 3, 13, 18**) | |
| 67. Ronell suffered a fatal gunshot wound with an entry in Ronell's left mid back (same entry as prior gunshot wound) and exiting from his chest that moved left right, back to front, and up, which is consistent with being shot while turned away from Defendant and crouched/falling (**Ex. 3, 13, 18**) | |
| 68. Ronell suffered a fatal gunshot wound with an entry into Ronell's left side, that moved left to right and up, stopping his lungs which is consistent with being shot while turned away from Defendant and crouched/falling (**Ex. 3, 14, 18**) | |
| 69. Ronell suffered a non-fatal gunshow wound with an entry into the back of Ronell's left shoulder and stopped in | |

his clavicle that moved back to front and up which is consistent with being shot while turned away from Defendant and crouched/falling (**Ex. 3, 13, 18**)

70. Ronell suffered a non fatal gunshot wound with an entry into Ronell's right mid back that exited the right top of his shoulder and moved back to front and up which is consistent with being shot while turned away from Defendant and crouched/falling; finally, a non fatal gun shot wound with an entry into Ronell's left forearm that exited his left elbow and moved right to left, back to front and up which is consistent with being shot while turned away from Defendant and on the ground or crouched/falling. (**Ex. 3, 15, 18**)

71. Ronell suffered a non fatal gun shot wound with an entry into Ronell's left forearm that exited his left elbow and moved right to left, back to front and up which is consistent with being shot while turned away from Defendant and

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
1901 Harrison St., Ste. 1140,
Oakland, CA 94612
Tel: (510) 929 - 5400

| on the ground or crouched/falling. (**Ex. 3, 16, 18**). | |

Date: June 26, 2020                           Respectfully submitted,


                                              **POINTER & BUELNA, LLP**

                                              **LAWYERS FOR THE PEOPLE**


                                              /s/ Patrick Buelna
                                              PATRICK M. BUELNA
                                              COUNSEL FOR PLAINTIFFS