**RANDY J. RISNER**
Interim City Attorney, SBN 172552
CITY OF VALLEJO, City Hall
555 Santa Clara Street, 3rd Floor
Vallejo, CA  94590
Tel:     (707) 648-4545
Fax:    (707) 648-4687

**DALE L. ALLEN, JR.**, State Bar No. 145279
dallen@aghwlaw.com
**JOHN B. ROBINSON**, State Bar No. 297065
jrobinson@aghwlaw.com
ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, CA  94104
Telephone:     (415) 697-2000
Facsimile:      (415) 813-2045

Attorneys for Defendant
CITY OF VALLEJO

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| I.F., by and through her Next Friend SHASTA SKINNER, individually and as successor-in-interest to Decedent RONELL FOSTER; R.F., by and through his guardian ad litem SHENA BATTEN, individually and as successor-in-interest to Decedent RONELL FOSTER; PAULA MCGOWAN, individually; and RONELL FOSTER, SR., individually,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF VALLEJO, a municipal corporation; RYAN MCMAHON, individually as a Police Officer for the CITY OF VALLEJO; and DOES 1-50, inclusive, jointly and severally,<br><br>Defendants. | Case No. 2:18-cv-00673-JAM-CKD<br><br>**DEFENDANT CITY OF VALLEJO'S STATEMENT OF UNDISPUTED FACTS PURSUANT TO EASTERN DISTRICT LOCAL RULE 260(a)**<br><br>Hon. John A. Mendez<br><br>Date:   August 25, 2020<br>Time:  1:30 p.m.<br>Ctrm:  6 (14th Floor)<br><br>Trial:   December 7, 2020 |

///

///

1  DEFENDANT CITY OF VALLEJO'S STATEMENT OF UNDISPUTED FACTS
2:18-CV-00673-JAM-CKD

387946.1

## I. INTRODUCTION

Below please find defendant City of Vallejo's separate statement of undisputed material facts in support of defendant's motion for summary judgment, or in the alternative, motion for summary adjudication.

| UNDISPUTED FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND EVIDENCE |
|---|---|
| 1. Following the February 13, 2018 incident involving Mr. Foster, several investigations occurred simultaneously.<br><br>*Iacono Dep.* attached as Ex. "B" to *Declaration of John Robinson*, at 48-49:22-11. | 1. |
| 2. A Professional Standards Unit, or Internal Affairs (IA), investigation is deployed anytime there is a use of deadly force. IA began an administrative review of the incident the same day it occurred, February 13, 2018.<br><br>*Williams Dep.* attached as Ex. "A" to *Declaration of John Robinson*, at 21:20-23, 96:14-19. | 2. |
| 3. Solano County District Attorney's Office conducted a criminal investigation because of the fatal incident.<br><br>*Iacono Dep.* attached as Ex. "B" to *Declaration of John Robinson*, at 48-49:22-11. | 3. |
| 4. The Critical Incident Review Board (CIR) was tasked with determining whether McMahon's actions were consistent with Vallejo Police Department (VPD) policy and whether additional training is recommended.<br><br>*Williams Dep.* attached as Ex. "A" to *Declaration of John Robinson*, at 16-17:11-9. | 4. |
| 5. The focus of any VPD IA investigation is discipline.<br><br>*Iacono Dep.* attached as Ex. "B" to *Declaration of John Robinson*, at 9:22-24. | 5. |

| UNDISPUTED FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND EVIDENCE |
|---|---|
| 6. The objective of the Solano County investigation was to determine the presence or absence of criminal liability on the part of the officer.<br><br>*Williams Dep.* attached as Ex. "A" to *Declaration of John Robinson*, at 25:13-17. | 6. |
| 7. The purpose of an investigation by CIR is to decide whether an officer's actions were consistent with policy and procedure.<br><br>*Iacono Dep.* attached as Ex. "B" to *Declaration of John Robinson*, at 23:20-24. | 7. |
| 8. CIR reviews a critical incident within the scope of developing training and curriculum.<br><br>*Iacono Dep.* attached as Ex. "B" to *Declaration of John Robinson*, at 9:22-24. | 8. |
| 9. Although the VPD Chief is the final decision maker, the Chief makes the determination based on a report prepared by the CIR and/or IA.<br><br>*Williams Dep.* attached as Ex. "A" to *Declaration of John Robinson*, at 67:6-11. | 9. |
| 10. Once an investigation is complete and a report is generated, the findings go to the Chief for an ultimate decision.<br><br>*Williams Dep.* attached as Ex. "A" to *Declaration of John Robinson*, at 68:23-25. | 10. |
| 11. The Solano District Attorney's Office investigation concluded the shooting was lawful because Foster posed an immediate threat to the personal safety of McMahon who was lawfully seeking to apprehend Foster.<br><br>*Williams Dep.* attached as Ex. "A" to *Declaration of John Robinson*, at 37:13-14. | 11. |

| UNDISPUTED FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND EVIDENCE |
|---|---|
| 12. CIR investigated the incident and determined the shooting was within policy.<br><br>*Williams Dep.* attached as Ex. "A" to *Declaration of John Robinson*, at 37:11-12. | 12. |
| 13. However, CIR recommended VPD update and focus on realistic scenario-based interaction utilizing tactical decision making and "shoot/don't shoot" situations.<br><br>*Iacono Dep.* attached as Ex. "B" to *Declaration of John Robinson*, at 36:3-8. | 13. |
| 14. Current training consists of range training, targets designed to decide on whether to use deadly force or non-deadly force, and a scenario-based tactical decision-making simulation trainer called "VirTra."<br><br>*Iacono Dep.* attached as Ex. "B" to *Declaration of John Robinson*, at 36-37:21-9. | 14. |
| 15. VirTra is a 320-degree screen training system designed to simulate real-life scenarios that have occurred in the world of law enforcement.<br><br>*Iacono Dep.* attached as Ex. "B" to *Declaration of John Robinson*, at 37-38:12-2. | 15. |
| 16. These training methods were in place prior to the incident involving Mr. Foster.<br><br>*Iacono Dep.* attached as Ex. "B" to *Declaration of John Robinson*, at 38:7-9. | 16. |
| 17. Joseph Allio became the interim Chief at VPD in July 2019, the highest-ranking officer in the VPD. | 17. |

| UNDISPUTED FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND EVIDENCE |
|---|---|
| *Allio Dep.* attached as Ex. "C" to *Declaration of John Robinson*, at 10:5-11, 11:1-6. | |
| 18. Within his first month, Allio evaluated the CIR report, the body-worn camera, and VPD policies.<br><br>*Allio Dep.* attached as Ex. "C" to *Declaration of John Robinson*, at 18:15-19. | 18. |
| 19. Allio determined McMahon did not violate VPD use of force policy because "[Foster] choose to grab a flashlight and attempt[ed] to assault a police officer with it which could be a deadly weapon…"<br><br>*Allio Dep.* attached as Ex. "C" to *Declaration of John Robinson*, at 25:14-22, 27:1-3. | 19. |
| 20. However, Allio concluded McMahon violated policy regarding his failure to update radio dispatch and his failure to timely activate his body worn camera improper.<br><br>*Allio Dep.* attached as Ex. "C" to *Declaration of John Robinson*, at 12:19-25, 31:17-22, 35:21-23. | 20. |
| 21. Allio required follow up training and sent a memo to the training division.<br><br>*Allio Dep.* attached as Ex. "C" to *Declaration of John Robinson*, at 40:1-10. | 21. |
| 22. The current VPD Chief, Shawny Williams, was sworn on November 12, 2019.<br><br>*Williams Dep.* attached as Ex. "A" to *Declaration of John Robinson*, at 9:10-13. | 22. |
| 23. At the time Williams became Chief, McMahon was already on administrative leave. | 23. |

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

| UNDISPUTED FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND EVIDENCE |
|---|---|
| *Williams Dep.* attached as Ex. "A" to *Declaration of John Robinson*, at 46:11-20. | |
| 24. Williams analyzed the body-worn camera video, as well as McMahon's statement given to homicide investigators on the night of the incident.<br><br>*Williams Dep.* attached as Ex. "A" to *Declaration of John Robinson*, at 86:7-15. | 24. |
| 25. Combined with CIR's findings and Allio's opinions, Williams recommended an IA review.<br><br>*Williams Dep.* attached as Ex. "A" to *Declaration of John Robinson*, at 27-28:21-2. | 25. |
| 26. Williams did not specifically advise IA on what to investigate.<br><br>*Williams Dep.* attached as Ex. "A" to *Declaration of John Robinson*, at 82:10-12. | 26. |
| 27. However, IA investigations include a review of the entire incident.<br><br>*Williams Dep.* attached as Ex. "A" to *Declaration of John Robinson*, at 96:1-3. | 27. |
| 28. Icacono was the investigations division commander when this incident occurred. He spent hours reviewing the incident.<br><br>*Iacono Dep.* attached as Ex. "B" to *Declaration of John Robinson*, at 15:12-13, 55:19-22. | 28. |
| 29. The IA investigation had not concluded as of April 27, 2020, when Williams, Allio, and Captain Joseph Iaocano were deposed.<br><br>*Williams Dep.* attached as Ex. "A" to *Declaration of John Robinson*, at 29:19-25, 31-32:25-12. | 29. |

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

6

DEFENDANT CITY OF VALLEJO'S STATEMENT OF UNDISPUTED FACTS
2:18-CV-00673-JAM-CKD

387946.1

| UNDISPUTED FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND EVIDENCE |
|---|---|
| 30. Allio concluded that McMahon failed to recognize the safety of Mr. Foster outweighed apprehension for a minor traffic violation. And that acting without a cover officer increased the danger to both McMahon and Foster.<br><br>*Allio Dep.* attached as Ex. "C" to *Declaration of John Robinson*, at 30:7-14. | 30. |
| 31. Allio concluded that rather than continuing after Foster, McMahon should have found a safe place to position himself, report the direction Foster was last seen and try to set up a perimeter to locate him.<br><br>*Allio Dep.* attached as Ex. "C" to *Declaration of John Robinson*, at 34:1-4. | 31. |
| 32. Lexipol is a commercial company that provides policies and procedures for police departments in California. Lexipol was the Department's provider of policies and procedures at the time of the subject incident (and still is today). Those policies included: (1) Use of Force (Policy 300); (2) Critical Incident Review Boards (Policy 301); (3) Control Devices and Techniques (Policy 304); (4) Conducted Energy Device (Policy 305); (5) Officer-Involved Shootings and Deaths (Policy 306); (6) Vehicle Pursuits (Policy 308); (7) Standards of Conduct (321); (8) Death Investigation (Policy 331); (9) Bias-Based Policing (Policy 401); (10) Crime and Disaster Scene Integrity (Policy 403); (11) Detentions and Photographing Detainees (Policy 420); (12) Portable Audio/Video Recorders (Policy 425); (13) Foot Pursuits (Policy 427); (14) Recruitment and Selection (Policy 1000); and (15) Background Investigations (Policy 1001).<br><br>*Declaration of Lt. Knight*, No. 3; *see also* Ex. "A" to *Declaration of Lt. Knight*. | 32. |
| 33. California Peace Officer Standards and Training (POST) is a state-wide organization composed of law enforcement executives and advisors. POST sets forth | 33. |

| UNDISPUTED FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND EVIDENCE |
|---|---|
| standards for the basic and continued training of peace officers, and certifies local law-enforcement agencies and their officers as in compliance with those standards. In addition, POST reviews and certifies training courses developed by local law-enforcement agencies as in compliance with POST standards and expectations. POST conducts regular audits of local agencies and officers to determine compliance, and certifies those agencies and officers that are in compliance.<br><br>*Declaration of Lt. Knight*, No. 4. | |
| 34. POST sets forth the following basic training and fitness requirements for a peace officer and its employing agency to receive POST certification: (a) successful completion of a 664-hour (six month) minimum, POST-certified police academy course, which includes 42 POST "Learning Domains," i.e., topics of study, including defensive tactics, racial profiling, investigatory detentions, the laws of arrest and the use of force; (b) approval of the candidate's medical condition and psychological condition, each by a licensed physician; (c) approval of the candidate's personal history and background for fitness to be a peace officer, at which point the candidate may be sworn as a peace officer; (d) completion of a field training program with a qualified Field Training Officer; (e) biannual update training for every officer who serves in a patrol function.<br><br>*Declaration of Lt. Knight*, No. 5. | 34. |
| 35. The update training consists of 24 hours of continuing education, of which 12 hours are devoted to "perishable skills," i.e., skills that may deteriorate over time if not refreshed, as follows: four hours of Arrest Control Techniques, a form of defensive tactics including the proper use of force; four hours of non-pursuit operation of a motor vehicle; four hours of Tactical Firearms and/or use-of-force options. | 35. |

| UNDISPUTED FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND EVIDENCE |
|---|---|
| POST also requires two hours of Tactical Communications. Every quarter, Vallejo Police officers undergo Continuous Professional Training. The Vallejo Police Department's Field Training Officer program is typically 18 weeks, exceeding POST's 10-week minimum.<br><br>*Declaration of Lt. Knight*, No. 6. | |
| 36. Ryan McMahon successfully completed the POST-certified police academy prior to joining VPD. This would have required that he demonstrate competence in areas including, but not limited to, use of force (Lexipol 300). Prior to joining VPD in 2017, Ryan McMahon had several years of law enforcement experience with other agencies in California.<br><br>*Declaration of Lt. Knight*, No. 7. | 36. |
| 37. Officers with VPD may also choose to obtain additional certificates, which are awarded based on an officer's further education and experience. The Department encourages its officers to seek and obtain these certificates, which promote the officer's competency within VPD. At the time of the incident, Ryan McMahon possessed many certificates, many of which were done on his own initiative.<br><br>*Declaration of Lt. Knight*, No. 8. | 37. |
| 38. Amongst the requirements for an agency to obtain POST-certification, it must agree to abide by POST standards and only employ POST-certified officers. Vallejo was a POST-certified agency on February 13, 2018.<br>*Declaration of Lt. Knight*, No. 9. | 38. |
| 39. VPD observes POST training standards and provides internal training through line up training, training bulletins, Lexipol policies, general orders, California Peace Officer Association training, and training range, defensive tactics/weaponless defense, and Taser. | 39. |

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

| UNDISPUTED FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND EVIDENCE |
|---|---|
| *Declaration of Lt. Knight*, No. 10. | |
| 40. Supervisors in VPD generally give daily briefings to their officers, where they often discuss updates on law enforcement topics and issues. Additionally, VPD alerts each officer of any update to Lexipol policy, and electronic copies are available via VPD's server.<br><br>*Declaration of Lt. Knight*, No. 11. | 40. |
| 41. Officers in VPD also receive training bulletins and review publications, such as the California Criminal Manual and the Law Enforcement Legal Reporter. VPD brings in outside trainers to cover different topics concerning law enforcement, specifically related to use of force and tactical communication. VPD also receives legal and law-enforcement-related updates from other sources, including law enforcement professionals, prosecutors, and members of the City's Attorney's Office.<br><br>*Declaration of Lt. Knight*, No. 12. | 41. |
| 42. VPD policy permits an officer to use deadly force to protect him/herself from what he/she reasonably believes would be an imminent threat of death or serious bodily injury (Policy 300.4).<br><br>*Declaration of Lt. Knight*, No. 12. | 42. |
| 43. VPD adheres to California Penal Code § 832.5, which requires the Department have a procedure for investigating complaints made by the public, and that it make a written description of the procedure available to the public. An internal investigation conducted by VPD results in one of the following findings for each allegation, which have the following meanings: | 43. |

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

| UNDISPUTED FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND EVIDENCE |
|---|---|
| a. Exonerated: Action alleged did occur, but was lawful, justified, and proper.<br>b. Not sustained: There is insufficient information/evidence to prove or disprove the allegation.<br>c. Sustained: The allegation is supported by sufficient information and/or evidence.<br>d. Unfounded: The allegation is false; alleged act did not occur, employee or VPD was not involved.<br><br>*Declaration of Lt. Knight*, No. 12. | |
| 44. Ryan McMahon was hired by VPD in July 24, 2017.  On July 28, 2017, Ryan McMahon scored 100% on a written examination covering topics related to the use of deadly force.  Also in 2017, Ryan McMahon attended training that covered topics such as (a) basic firearms safety rules; (b) lethal force and Lexipol 300.4; and (c) case law regarding fleeing felons and the standard of reasonable use of force (Tennessee v. Garner, and Graham v. Connor).<br><br>*Declaration of Lt. Knight*, No. 16. | 44. |
| 45. As of February 13, 2018, no citizen complaints regarding use of unlawful force had been reported to VPD regarding Ryan McMahon.  As of February 13, 2018, Ryan McMahon did not have any sustained findings.<br><br>*Declaration of Lt. Knight*, No. 15. | 45. |
| 46. In April 2018, Ryan McMahon attended Perishable Skills Training at the Napa Valley College Criminal Justice Training Center designed to meet or exceed POST standards.  Course objectives included demonstrating an understanding of agency use of force policies.  This included a discussion on Fourth Amendment standards for determining objective reasonableness, | 46. |

| UNDISPUTED FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND EVIDENCE |
|---|---|
| relevant case law standards, Penal Code 835(a), and the agency's use of force policy.<br><br>*Declaration of Lt. Knight*, No. 17. | |
| 47. VPD foot pursuit Policy 427 does not restrict an officer from chasing a suspect on foot.  If that were the case, VPD officers would never chase after a suspect on foot based on the premise that it is dangerous and could place the officer at risk.  The foot pursuit policy provides guidelines to assist officers in making the decision when to initiate or continue the pursuit.  Deciding to initiate or continue a foot pursuit is a decision that an officer must make quickly and under unpredictable and dynamic circumstances.<br><br>*Zwickey Expert Opinion Report* attached as Ex. "A" to *Declaration of Jared Zwickey*, at pg. 17. | 47. |
| 48. Officer McMahon had probable cause to stop and detain Mr. Foster to warn him that he was riding his bicycle without required lighting equipment during darkness, and for riding in a hazardous manner in violation of the California Vehicle Code.<br><br>*Zwickey Expert Opinion Report* attached as Ex. "A" to *Declaration of Jared Zwickey*, at pg. 11. | 48. |
| 49. Mr. Foster had a responsibility to remain at the scene with the officer instead of fleeing from the officer to avoid being warned or issued a vehicle code citation.<br><br>*Zwickey Expert Opinion Report* attached as Ex. "A" to *Declaration of Jared Zwickey*, at pg. 11. | 49. |
| 50. McMahon had probable cause to stop Mr. Foster and take him into custody for evading arrest, and for resisting, obstructing and delaying a peace officer in the performance of his duties. | 50. |

| UNDISPUTED FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND EVIDENCE |
|---|---|
| *Zwickey Expert Opinion Report* attached as Ex. "A" to *Declaration of Jared Zwickey*, at pg. 15. | |
| 51. McMahon followed appropriate department policies and procedures when he tried to stop Mr. Foster in his patrol vehicle after Mr. Foster fled.<br><br>*Zwickey Expert Opinion Report* attached as Ex. "A" to *Declaration of Jared Zwickey*, at pg. 15. | 51. |
| 52. McMahon chased Mr. Foster on foot after Mr. Foster fled on foot into a residential area in accordance with department foot pursuit Policy 427.<br><br>*Zwickey Expert Opinion Report* attached as Ex. "A" to *Declaration of Jared Zwickey*, at pg. 16. | 52. |
| 53. The use of a Taser and an improvised impact weapon (flashlight) by McMahon to stop, control and overcome Mr. Foster's active resistance, and his multiple attempts to flee from custody, is consistent with his training and experience, department policy and with law enforcement policies and practices.<br><br>*Zwickey Expert Opinion Report* attached as Ex. "A" to *Declaration of Jared Zwickey*, at pg. 18. | 53. |
| 54. According to VPD Policy 305, a verbal warning of the intended use of the Taser device should precede its application, unless it would endanger the safety of officers when it is not practicable due to the circumstances. Under the circumstances, a verbal warning might have endangered the officer's safety. Even if McMahon gave a warning, it was highly unlikely Mr. Foster would have complied because he willfully ignored multiple commands to stop fleeing and resisted arrest. Mr. Foster showed no intent to submit to arrest.<br><br>*Zwickey Expert Opinion Report* attached as Ex. | 54. |

| UNDISPUTED FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND EVIDENCE |
|---|---|
| "A" to *Declaration of Jared Zwickey*, at pg. 23-24. | |
| 55. The body worn camera video reveals Mr. Foster grabbed McMahon's flashlight out of his hand and was in control of the flashlight before and during the time McMahon discharged his firearm.<br><br>*Zwickey Expert Opinion Report* attached as Ex. "A" to *Declaration of Jared Zwickey*, at pg. 19. | 55. |
| 56. There is no corroborating evidence to support the idea that Mr. Foster was clearly and obviously unarmed and was running away when he was shot by McMahon.<br><br>*Zwickey Expert Opinion Report* attached as Ex. "A" to *Declaration of Jared Zwickey*, at pg. 24. | 56. |
| 57. The number of rounds fired by Officer McMahon is consistent with the firearms training objectives of the Vallejo Police Department. It is also consistent with the manner in which all peace officers in California are trained to fire their firearms at persons who pose an immediate threat to their safety or the safety of others.<br><br>*Zwickey Expert Opinion Report* attached as Ex. "A" to *Declaration of Jared Zwickey*, at pg. 33. | 57. |
| 58. Given that no policy can realistically predict every possible situation an officer might encounter, officers are entrusted to use well-reasoned discretion in determining the appropriate use of force in each incident.<br><br>*Zwickey Expert Opinion Report* attached as Ex. "A" to *Declaration of Jared Zwickey*, at pg. 34. | 58. |

| UNDISPUTED FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND EVIDENCE |
|---|---|
| 59. The use of deadly force by McMahon was consistent with current law enforcement policies and procedures, if he reasonably believed that his life was in imminent jeopardy of being killed or seriously injured, when Mr. Foster assaulted the officer with the officer's flashlight.<br><br>*Zwickey Expert Opinion Report* attached as Ex. "A" to *Declaration of Jared Zwickey*, at pg. 35. | 59. |

Dated: July 10, 2020

Respectfully submitted,

ALLEN, GLAESSNER,
HAZELWOOD & WERTH, LLP

By: */s/ John B. Robinson*
DALE L. ALLEN, JR.
JOHN B. ROBINSON
Attorneys for Defendant
CITY OF VALLEJO