1  BRUCE A. KILDAY, S.B. #66415
      Email:  bkilday@akk-law.com
2  DERICK E. KONZ, S.B. #286902
      Email:  dkonz@akk-law.com
3  **ANGELO, KILDAY & KILDUFF, LLP**
   Attorneys at Law
4  601 University Avenue, Suite 150
   Sacramento, CA  95825
5  Telephone:  (916) 564-6100
   Telecopier:  (916) 564-6263
6

7  Attorneys for Defendant RYAN McMAHON
8

9                    **UNITED STATES DISTRICT COURT**

10                   **EASTERN DISTRICT OF CALIFORNIA**

11

12  I.F., by and through her guardian ad litem          )    Case No.: 2:18-cv-00673-JAM-CKD
13  SHASTA SKINNER, individually and as                 )
    successor-in-interest to Decedent RONELL            )    **DEFENDANT RYAN McMAHON'S**
14  FOSTER; et al.,                                     )    **STATEMENT OF UNDISPUTED FACTS**
                                                        )    **IN SUPPORT OF MOTION FOR**
15                          Plaintiffs,                 )    **SUMMARY JUDGMENT**
                                                        )
16                  vs.                                 )    Hon. John A. Mendez
17                                                      )
    CITY OF VALLEJO, a municipal corporation;           )    Date:  August 25, 2020
18  et al.,                                             )    Time:  1:30 p.m.
                                                        )    Courtroom: 6 (14th Floor)
19                          Defendants.                 )
20  _____

21          Pursuant to Eastern District Local Rule 260(a), Defendant RYAN McMAHON

22  ("Defendant") hereby submits the following Statement of Undisputed Facts in support of his

23  Motion for Summary Judgment.

24          The evidence cited in support of these facts is submitted herewith:

| DEFENDANTS' UNDISPUTED FACT AND SUPPORTING EVIDENCE | ADMIT OR DENY BY PLAINTIFF |
|---|---|
| 1.  On February 13, 2018, at approximately 7:40 p.m., Ofc. McMahon was working a patrol shift for the Vallejo Police Department in full uniform and a | 1. |

| | DEFENDANTS' UNDISPUTED FACT AND SUPPORTING EVIDENCE | ADMIT OR DENY BY PLAINTIFF |
|---|---|---|
| | marked car with lights and sirens.<br><br>**Evidence:**<br><br>Exhibit A (McMahon Declaration) at ¶ 1, contained on the CD attached to the Notice of Lodging CD of Exhibits, filed herewith (hereinafter "Ex. A"). | |
| 2. | It was dark.<br><br>**Evidence:**<br><br>Ex. A (McMahon Declaration) at ¶ 2. | 2. |
| 3. | Officer McMahon approached the intersection of Capitol Street and Sonoma Boulevard in the City of Vallejo and observed Foster, for approximately thirty seconds, riding a bicycle without a light and disrupting traffic by swerving in and out of lanes in the intersection.<br><br>**Evidence:**<br><br>Ex. A (McMahon Declaration) at ¶ 3;<br><br>Exhibit B (photo) at Bates No. 2387, contained on the CD attached to the Notice of Lodging CD of Exhibits filed herewith (hereinafter "Ex. B"); see also Declaration of Stephanie Dailey at ¶ 2. | 3. |
| 4. | Ofc. McMahon was aware of recent incidents in Vallejo involving bicyclists and pedestrians killed or injured by vehicles.<br><br>**Evidence:**<br><br>Ex. A (McMahon Declaration) at ¶ 4. | 4. |
| 5. | Sonoma Boulevard is a heavily traveled four-lane highway with a posted speed limit of thirty miles per hour.<br><br>**Evidence:**<br><br>Ex. A (McMahon Declaration) at ¶ 5. | 5. |
| 6. | Although Ofc. McMahon observed the vehicle code violations, he had not yet decided whether he was going to issue Foster a citation or just stop him, investigate further, and counsel him about bicycle safety | 6. |

| | DEFENDANTS' UNDISPUTED FACT AND SUPPORTING EVIDENCE | ADMIT OR DENY BY PLAINTIFF |
|---|---|---|
| | **Evidence:** <br> Ex. A (McMahon Declaration) at ¶ 6. | |
| 7. | Ofc. McMahon activated his emergency lights and shined his spotlight toward Foster. <br><br> **Evidence:** <br><br> Ex. A (McMahon Declaration) at ¶ 7. | 7. |
| 8. | Foster looked in Ofc. McMahon's direction and, with a startled expression, fled on the bicycle. <br><br> **Evidence:** <br><br> Ex. A (McMahon Declaration) at ¶ 8. | 8. |
| 9. | Ofc. McMahon pursued northbound on Sonoma Boulevard with emergency lights activated. <br><br> **Evidence:** <br><br> Ex. A (McMahon Declaration) at ¶ 9. | 9. |
| 10. | Foster rode onto the sidewalk, turned back toward Ofc. McMahon and stopped behind a van that was parallel parked on the street, approximately fifteen feet from Ofc. McMahon. <br> **Evidence:** <br> Ex. A (McMahon Declaration) at ¶ 10. | 10. |
| 11. | Foster's feet were on the ground and he was straddling the bike in a bladed stance. <br> **Evidence:** <br> Ex. A (McMahon Declaration) at ¶ 11. | 11. |
| 12. | Foster was concealing the right side of his body behind the parked van. <br> **Evidence:** <br> Ex. A (McMahon Declaration) at ¶ 11. | 12. |
| 13. | Ofc. McMahon stopped his patrol car and stood in the door frame, facing Foster. | 13. |

DEFENDANT RYAN McMAHON'S STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

| | | DEFENDANTS' UNDISPUTED FACT AND SUPPORTING EVIDENCE | ADMIT OR DENY BY PLAINTIFF |
|---|---|---|---|
| | | **Evidence:** Ex. A (McMahon Declaration) at ¶ 12. | |
| | 14. | Ofc. McMahon identified himself as a Vallejo Police Officer and ordered Foster to come sit in front of his patrol car so that they could speak about erratic driving and vehicle safety. **Evidence:** Ex. A (McMahon Declaration) at ¶ 12. | 14. |
| | 15. | Foster looked at Ofc. McMahon, looked around, said something akin to, "stop messing with me," and fled on the bike northbound on Sonoma Boulevard. **Evidence:** Ex. A (McMahon Declaration) at ¶ 13. | 15. |
| | 16. | Foster was riding into oncoming traffic and in and out of marked lanes. **Evidence:** Ex. A (McMahon Declaration) at ¶ 14. | 16. |
| | 17. | Ofc. McMahon returned to his patrol car, activated his lights and sirens, and pursued. **Evidence:** Ex. A (McMahon Declaration) at ¶ 15. | 17. |
| | 18. | Foster turned left, westbound onto Florida Street, then cut through a church parking lot, southbound toward Carolina Street **Evidence:** Ex. A (McMahon Declaration) at ¶ 16. | 18. |
| | 19. | Ofc. McMahon knew he would have difficulty safely pursing through the narrow parking lot, so continued westbound on Florida Street to southbound Marin Street toward Carolina Street. **Evidence:** Ex. A (McMahon Declaration) at ¶ 17. | 19. |

DEFENDANT RYAN McMAHON'S STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

| | DEFENDANTS' UNDISPUTED FACT AND SUPPORTING EVIDENCE | ADMIT OR DENY BY PLAINTIFF |
|---|---|---|
| 20. | Ofc. McMahon updated dispatch of his location at Florida Street and Marin Street and that he had a fleeing suspect on a bicycle.<br><br>**Evidence:**<br><br>Ex. A (McMahon Declaration) at ¶ 18. | 20. |
| 21. | The area of Florida Street and Marin Street was a mixed commercial/residential neighborhood.<br><br>**Evidence:**<br><br>Ex. A (McMahon Declaration) at ¶ 19. | 21. |
| 22. | As Ofc. McMahon drove south on Marin Street, he saw Foster traveling westbound on Carolina Street, then lose control of the bicycle and fall off.<br><br>**Evidence:**<br><br>Ex. A (McMahon Declaration) at ¶ 20. | 22. |
| 23. | Ofc. McMahon was approximately fifteen yards away from Foster when he fell off his bike and began to flee on foot.<br><br>**Evidence:**<br><br>Ex. A (McMahon Declaration) at ¶ 21, 22. | 23. |
| 24. | Ofc. McMahon exited his patrol car and pursued on foot, westbound on Carolina Street.<br><br>**Evidence:**<br><br>Ex. A (McMahon Declaration) at ¶ 23. | 24. |
| 25. | Ofc. McMahon attempted to activate his body-worn-camera, but it would not start.<br><br>**Evidence:**<br><br>Ex. A (McMahon Declaration) at ¶ 24. | 25. |
| 26. | McMahon attempted to update dispatch of his location, but the transmission did not go through. | 26. |

DEFENDANT RYAN McMAHON'S STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

| | DEFENDANTS' UNDISPUTED FACT AND SUPPORTING EVIDENCE | ADMIT OR DENY BY PLAINTIFF |
|---|---|---|
| | **Evidence:** Ex. A (McMahon Declaration) at ¶ 25. | |
| 27. | As Foster fled, he reached both hands into the front of his waistband and looked back at Ofc. McMahon. **Evidence:** Ex. A (McMahon Declaration) at ¶ 26. | 27. |
| 28. | Ofc. McMahon shouted commands for Foster to stop and not to reach into his waistband. **Evidence:** Ex. A (McMahon Declaration) at ¶ 27. | 28. |
| 29. | From approximately ten to fifteen feet away from Foster, believing that he may have been armed based on his actions of previously trying to conceal the right side of his body, looking back while running, and grabbing his waistband, Ofc. McMahon un-holstered his Taser and deployed it toward Foster's back, but it was ineffective. **Evidence:** Ex. A (McMahon Declaration) at ¶ 28. | 29. |
| 30. | Ofc. McMahon and Foster became tangled in the Taser wires, but Foster broke free and continued running. **Evidence:** Ex. A (McMahon Declaration) at ¶ 29. | 30. |
| 31. | Ofc. McMahon holstered the Taser and continued the foot pursuit | 31. |

| | DEFENDANTS' UNDISPUTED FACT AND SUPPORTING EVIDENCE | ADMIT OR DENY BY PLAINTIFF |
|---|---|---|
| | **Evidence:**<br><br>Ex. A (McMahon Declaration) at ¶ 30. | |
| 32. | Foster abruptly turned south at 415 Carolina Street into a narrow walkway of a multi-unit residential complex.<br><br>**Evidence:**<br><br>Ex. A (McMahon Declaration) at ¶ 31. | 32. |
| 33. | The walkway was approximately three feet wide.<br><br>**Evidence:**<br><br>Ex. A (McMahon Declaration) at ¶ 32.<br><br>Ex. B (photos) at bates no. 2278, 2279, 2304. | 33. |
| 34. | As Foster ran deeper into the property at 415 Carolina, he fell.<br><br>**Evidence:**<br><br>Ex. A (McMahon Declaration) at ¶ 33. | 34. |
| 35. | Ofc. McMahon saw Foster on the ground, pursued down the narrow walkway, and caught up just as Foster started to stand.<br><br>**Evidence:**<br><br>Ex. A (McMahon Declaration) at ¶ 34. | 35. |
| 36. | Ofc. McMahon pushed Foster back to the ground and onto a small concrete patio in the middle of the multi-unit complex.<br><br>**Evidence:**<br><br>Ex. A (McMahon Declaration) at ¶ 35. | 36. |

DEFENDANT RYAN McMAHON'S STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

| | DEFENDANTS' UNDISPUTED FACT AND SUPPORTING EVIDENCE | ADMIT OR DENY BY PLAINTIFF |
|---|---|---|
| 37. | The patio was approximately 6.5 feet by 11.6 feet. **Evidence:** Ex. B (Photos) at bates no. 2307 Exhibit N (Zwicky Report) at page 23 contained on the CD attached to the Notice of Lodging CD of Exhibits filed herewith (herein after "Ex N"); see also Declaration of Jared Zwickey at ¶ 2. | 37. |
| 38. | Foster fell onto his stomach and Ofc. McMahon straddled his back with his knees on the ground. **Evidence:** Ex. A (McMahon Declaration) at ¶ 36. | 38. |
| 39. | The patio was dark with only one small light bulb illuminated. **Evidence:** Ex. A (McMahon Declaration) at ¶ 37. | 39. |
| 40. | Ofc. McMahon told Foster that he was under arrest and ordered him to stop resisting, show his hands, and not reach for his waistband. **Evidence:** Ex. A (McMahon Declaration) at ¶ 38. | 40. |
| 41. | Foster did not comply with Ofc. McMahon's commands. **Evidence:** Ex. A (McMahon Declaration) at ¶ 39. | 41. |
| 42. | Foster grappled with Ofc. McMahon, pushed Ofc. McMahon off of him, and tried to get to a standing position. | 42. |

DEFENDANT RYAN McMAHON'S STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

| | DEFENDANTS' UNDISPUTED FACT AND SUPPORTING EVIDENCE | ADMIT OR DENY BY PLAINTIFF |
|---|---|---|
| | **Evidence:** Ex. A (McMahon Declaration) at ¶ 40. | |
| 43. | As Ofc. McMahon attempted to keep Foster on the ground, he drew his Taser with his left hand, pressed it into Foster's back and deployed it in drive-stun mode. **Evidence:** Ex. A (McMahon Declaration) at ¶ 41. Exhibit C (Body Worn Camera) at 03:40:48-03:40:50, contained on the CD attached to the Notice of Lodging CD of Exhibits filed herewith (herein after "Ex. C"); see also Declaration of Allen Pigg at ¶ 2. | 43. |
| 44. | The Taser was ineffective. **Evidence:** Ex. A (McMahon Declaration) at ¶ 42. Ex. C (Body Worn Camera) at 03:40:48-03:40:55. | 44. |
| 45. | Foster continued to grapple with Ofc. McMahon and attempt to get to his feet. **Evidence:** Ex. A (McMahon Declaration) at ¶ 43. Ex. C (Body Worn Camera) at 03:40:48-03:40:55 | 45. |
| 46. | Ofc. McMahon issued more commands for Foster to stop resisting and put his hands over his head, but Foster refused. **Evidence:** Ex. A (McMahon Declaration) at ¶ 44. | 46. |

DEFENDANT RYAN McMAHON'S STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

| | DEFENDANTS' UNDISPUTED FACT AND SUPPORTING EVIDENCE | ADMIT OR DENY BY PLAINTIFF |
|---|---|---|
| 47. | Ofc. McMahon attempted to use the Taser twice more in drive-stun mode on Foster's arm and side, but Foster knocked it away.<br><br>**Evidence:**<br><br>Ex. A (McMahon Declaration) at ¶ 45.<br><br>Exhibit C (Body Worn Camera) at 03:40:55-03:41:04. | 47. |
| 48. | The Taser was completely ineffective.<br><br>**Evidence:**<br><br>Ex. A (McMahon Declaration) at ¶ 46. | 48. |
| 49. | Based on Ofc. McMahon's training and experience, Foster appeared to be dangerously under the influence of methamphetamines, based on his level of resistance and being unaffected by the Taser and physical restraint techniques.<br><br>**Evidence:**<br><br>Ex. A (McMahon Declaration) at ¶ 47. | 49. |
| 50. | Ofc. McMahon transitioned to his aluminum Maglite flashlight, approximately thirteen inches long, to try and subdue Foster.<br><br>**Evidence:**<br><br>Ex. A (McMahon Declaration) at ¶ 48.<br><br>Exhibit C (Body Worn Camera) at 03:41:04-3:41:06. | 50. |
| 51. | Ofc. McMahon held the flashlight by the bulb-end and used it as an impact weapon by striking Foster in his clavicle and arm as Foster continued to grapple and try to get up. | 51. |

DEFENDANT RYAN McMAHON'S STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

| | DEFENDANTS' UNDISPUTED FACT AND SUPPORTING EVIDENCE | ADMIT OR DENY BY PLAINTIFF |
|---|---|---|
| | **Evidence:**<br><br>Ex. A (McMahon Declaration) at ¶ 49.<br><br>Ex. C (Body Worn Camera) at 03:41:04-03:41:11. | |
| 52. | Foster caught the flashlight by the handle and ripped it out of Ofc. McMahon's right hand.<br><br>**Evidence:**<br><br>Ex. A (McMahon Declaration) at ¶ 50.<br><br>Ex. C (Body Worn Camera) at 03:41:12-03:41:14;<br><br>Exhibit D (Still Frames from BWC) at Nos. 3294-3343, contained on the CD attached to the Notice of Lodging CD of Exhibits filed herewith (hereinafter "Ex. D"); see also Declaration of Durand Begault at ¶ 3;<br><br>Exhibit K (Blake Report) at p. 33, contained on the CD attached to the Notice of Lodging CD of Exhibits filed herewith (hereinafter "Ex. K"); see also Declaration of David Blake at ¶ 2.<br><br>Exhibit L (Desmoulin Report) at sections 7 and section 8.2 ("it is reasonable to say that Officer McMahon did not start shooting until after Mr. FOSTER took the flashlight from his right hand"), contained on the CD attached to the Notice of Lodging CD of Exhibits filed herewith (hereinafter "Ex. L"); see also Declaration of Geoffrey Desmoulins at ¶ 2. | 52. |
| 53. | Foster rose to his feet in a bladed stance, raised the flashlight near his head, and turned to strike Ofc. McMahon from approximately an arm's length away.<br><br>**Evidence:**<br><br>Ex. A (McMahon Declaration) at ¶ 51.<br><br>Ex. C (Body Worn Camera) at 03:41:14-03:41:15; | 53. |

| | DEFENDANTS' UNDISPUTED FACT AND SUPPORTING EVIDENCE | ADMIT OR DENY BY PLAINTIFF |
|---|---|---|
| | Ex. D (Still Frames) at Ex. D at Nos. 3343-3394; Ex. K (Blake Report) at pp. 34-36; Ex. L (Desmoulin Report) at sections 7 and 8.3. | |
| 54. | The flashlight was capable of causing significant injury, to include knocking Ofc. McMahon unconscious or death. **Evidence:** Ex. K (Blake Report) at p. 30; Ex. L (Desmoulin Report) at sections 8.1.1 and 11 ("reckless use of a metal flashlight carries a risk for significant likelihood of severe injury"). Ex. N (Zwickey Report) at p. 25 | 54. |
| 55. | Ofc. McMahon experienced an acute, albeit normal stress response associated with the tense, uncertain, and rapidly evolving dynamics. **Evidence:** Ex. K (Blake Report) at pp. 24-28. | 55. |
| 56. | As Foster rose with the flashlight, raised it, and turned to strike from approximately an arm's length away, Ofc. McMahon drew his pistol with his right hand toward Foster's front and fired seven shots in one continuous rapid burst as Foster turned and fell to his right side on the ground. **Evidence:** Ex. A (McMahon Declaration) at ¶ 52; Ex. C (Body Worn Camera) at 03:41:15-03:41:17; Ex. D (Still Frames) at Ex. D at Nos. 3360-3424; Ex. K (Blake Report) at pp. 36-42; | 56. |

-12-

DEFENDANT RYAN McMAHON'S STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

| | DEFENDANTS' UNDISPUTED FACT AND SUPPORTING EVIDENCE | ADMIT OR DENY BY PLAINTIFF |
|---|---|---|
| | Ex. L (Desmoulin Report) at sections 7 and 8.3. | |
| 57. | A minimum appropriate response time for Ofc. McMahon to have observed the stimulus (Foster raising the flashlight), draw his weapon, and fire his first round is 1 second.<br><br>**Evidence:**<br><br>Ex. K (Blake Report) at pp.38:<br><br>Ex. L (Desmoulin Report) at section 8.2 and Figure 17. | 57. |
| 58. | It is common that officers who react to a stimulus by deciding to fire at a suspect that is facing them, often fire–because of the officer's reaction time–as the suspect turns and falls, resulting in impact locations to the side, back, and head.<br><br>**Evidence:**<br><br>Ex. K (Blake Report) at p. 41. | 58. |
| 59. | Foster dropped the flashlight as he fell to the ground.<br><br>**Evidence:**<br><br>Ex. A (McMahon Declaration) at ¶ 53;<br><br>Ex. C (Body Worn Camera) at 03:41:15-03:41:17;<br><br>Ex. D (Still Frames) at Ex. D at Nos. 3360-3424;<br><br>Ex. K (Blake Report) at pp. 36-42;<br><br>Ex. L (Desmoulin Report) at section 7. | 59. |
| 60. | Ofc. McMahon stopped firing when Foster fell.<br><br>**Evidence:** | 60. |

| | DEFENDANTS' UNDISPUTED FACT AND SUPPORTING EVIDENCE | ADMIT OR DENY BY PLAINTIFF |
|---|---|---|
| | Ex. A (McMahon Declaration) at ¶ 54;<br><br>Ex. C (Body Worn Camera) at 03:41:15-03:41:17;<br><br>Ex. D (Still Frames) at Ex. D at Nos. 3360-3424;<br><br>Ex. K (Blake Report) at pp. 36-42;<br><br>Ex. L (Desmoulin Report) at section 7. | |
| 61. | Ofc. McMahon stopped firing within 1.3 seconds of Foster dropping the flashlight.<br><br>**Evidence:**<br><br>Ex. C (Body Worn Camera) at 03:41:15-03:41:17;<br><br>Ex. L (Desmoulin Report) at section 8.2. | 61. |
| 62. | An average officer can draw his firearm and fire seven shots within 2.1 seconds.<br><br>**Evidence:**<br><br>Ex. C (Body Worn Camera) at 03:41:15-03:41:17;<br><br>Ex. L (Desmoulin Report) at section 8.2. | 62. |
| 63. | Ofc. McMahon's judgment and decision-making to use deadly force were based upon the overall context of the event and a rapid pattern recognition associated with his previous training and experience.<br><br>**Evidence:**<br><br>Ex. K (Blake Report) at pp. 28-31. | 63. |
| 64. | Ofc. McMahon immediately updated dispatch of shots fired at 415 Carolina Street.<br><br>**Evidence:**<br><br>Ex. A (McMahon Declaration) at ¶ 55. | 64. |

DEFENDANT RYAN McMAHON'S STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

| | DEFENDANTS' UNDISPUTED FACT AND SUPPORTING EVIDENCE | ADMIT OR DENY BY PLAINTIFF |
|---|---|---|
| 65. | Ofc. McMahon was able to activate his body-worn-camera after the shooting, which buffered back to capture the preceding thirty seconds with no sound.<br><br>**Evidence:**<br><br>Ex. A (McMahon Declaration) at ¶ 56;<br><br>Ex. C (Body Worn Camera) | 65. |
| 66. | Foster suffered seven gunshot wounds, four fatal, that are consistent with the movement patterns and shot timing described above.<br><br>**Evidence:**<br><br>Exhibit E (Autopsy Report) contained on the CD attached to the Notice of Lodging CD of Exhibits filed herewith (hereinafter "Ex. E"); see also Declaration of Corey McLean at ¶ 2.<br><br>Ex. L (Desmoulin Report) at sections 8.4 and 10. | 66. |
| 67. | Ofc. McMahon had no weapon that could combat the flashlight threat except his pistol.<br><br>**Evidence:**<br><br>Ex. A (McMahon Declaration) at ¶ 57. | 67. |
| 68. | Two minutes and one second (2:01) elapsed from the time that Ofc. McMahon radioed that he had a fleeing suspect on a bicycle at Florida and Marin to when he radioed shots fired at 415 Carolina.<br><br>**Evidence:**<br><br>Ex. A (McMahon Declaration) at ¶ 59;<br><br>Exhibit J (Begault Report) at p. 3, contained on the CD attached to the Notice of Lodging CD of Exhibits filed herewith (hereinafter "Ex. J"); see also Declaration of Durand Begault at ¶ 2. | 68. |

| | DEFENDANTS' UNDISPUTED FACT AND SUPPORTING EVIDENCE | ADMIT OR DENY BY PLAINTIFF |
|---|---|---|
| | | |
| 69. | Postmortem toxicology of Foster revealed a blood alcohol content of 0.08%; methamphetamine at 0.70 mg/L; amphetamine at 0.057 mg/L; and THC at 12.4 mg/nl.<br><br>**Evidence:**<br><br>Exhibit F (Toxicology Report), contained on the CD attached to the Notice of Lodging CD of Exhibits filed herewith (hereinafter "Ex. F"); see also Declaration of Laureen Marinetti at ¶ 2. | 69. |
| 70. | The combined effect of this amount of alcohol, methamphetamine and marijuana intoxication was a potent drug combination that resulted in Foster being physically unaffected by physical restraint techniques, the Taser, and multiple impact strikes from the flashlight.<br><br>**Evidence:**<br><br>Exhibit M (Report of Kenton Wong) at pp. 2-5, contained on the CD attached to the Notice of Lodging CD of Exhibits filed herewith (hereinafter "Ex. M"); see also Declaration of Kenton Wong at ¶ 2. | 70. |
| 71. | Ofc. McMahon's use of deadly force was consistent with standard police training and POST learning domains.<br><br>**Evidence:**<br><br>Ex. K (Blake Report) at p. 30;<br><br>Ex. N (Zwicky Report) at pp. 35-36. | 71. |
| 72. | Prior to this incident, Ofc. McMahon had no contact with Foster and did not know his identity.<br><br>**Evidence:** | 72. |

| | DEFENDANTS' UNDISPUTED FACT AND SUPPORTING EVIDENCE | ADMIT OR DENY BY PLAINTIFF |
|---|---|---|
| | Ex. A (McMahon Declaration) at ¶ 58. | |
| 73. | A civilian witness (Mr. Wolfe) who lived in the residential complex at 415 Carolina Street came out of his residence and onto his patio when he heard, "Vallejo Police.  Stop."<br><br>**Evidence:**<br><br>Exhibit G (Wolfe Deposition) at pp. 20:5-7, 20:11-21, contained on the CD attached to the Notice of Lodging CD of Exhibits filed herewith (hereinafter "Ex G"); see also Declaration of Derick E. Konz at ¶ 2. | 73. |
| 74. | According to Mr. Wolfe, "Foster and the officer came down the wooden platform… [T]he officer had reached for him to take him into custody, and he had pulled away from the officer."<br><br>**Evidence:**<br><br>Ex. G (Wolfe Deposition) at pp. 22:16-25 | 74. |
| 75. | According to Mr. Wolfe, the officer told Foster, "'Get on the ground. Get on the ground.' He said it twice and Mr. Foster refused to comply.  So the cop is trying to subdue him to take him into custody, and Mr. Foster starts scuffling with the officer."<br><br>**Evidence:**<br><br>Ex. G (Wolfe Deposition) at pp. 22:16-25 | 75. |
| 76. | According to Mr. Wolfe, Foster was "combative" and "aggressive" with Ofc. McMahon, was pushing him, and struggling to keep Ofc. McMahon from gaining control.<br><br>**Evidence:**<br><br>Ex. G (Wolfe Deposition) at pgs: 23:7-8, 24:15-18, 25:7-9, 25:14-17 | 76. |

| | DEFENDANTS' UNDISPUTED FACT AND SUPPORTING EVIDENCE | ADMIT OR DENY BY PLAINTIFF |
|---|---|---|
| 77. | According to Mr. Wolfe, the Taser "didn't seem to have any effect on [Foster]."<br><br>**Evidence:**<br><br>Ex. G (Wolfe Deposition) at pp. 26:19-23 | 77. |
| 78. | Mr. Wolfe described Foster moving toward Ofc. McMahon "in anger trying to overpower" him just prior to the gunshots.<br><br>**Evidence:**<br><br>Ex. G (Wolfe Deposition) at pp. 30:1-5, 31:1-4 | 78. |
| 79. | According to Mr. Wolfe, Ofc. McMahon stopped firing when Foster fell.<br><br>**Evidence:**<br><br>Ex. G (Wolfe Deposition) at pp. 37:14-17 | 79. |
| 80. | When Foster was three years old, his parents gave up legal and actual custody of him to his grandmother.<br><br>**Evidence:**<br><br>Exhibit H (McGowan Deposition) at pp. 24:9-17, 25:9-15, contained on the CD attached to the Notice of Lodging CD of Exhibits filed herewith (hereinafter "Ex. H"); see also Declaration of Derick E. Konz at ¶ 3;<br><br>Exhibit I (Foster Sr. Deposition) at pp. 50:8-52:9, contained on the CD attached to the Notice of Lodging CD of Exhibits filed herewith (hereinafter "Ex. I"); see also Declaration of Derick E. Konz at ¶ 4. | 80. |
| 81. | Foster lived with his grandmother until he was eighteen.<br><br>**Evidence:** | 81. |

DEFENDANT RYAN McMAHON'S STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

| | DEFENDANTS' UNDISPUTED FACT AND SUPPORTING EVIDENCE | ADMIT OR DENY BY PLAINTIFF |
|---|---|---|
| | Ex. H (McGowan Deposition) at pp. 27:8-17<br><br>Ex. I (Foster Sr. Deposition) at pp. 50:8-52:9 | |
| 82. | At the time of Foster's death, Ms. McGowan did not know Foster's level of education, did not know where he went to high school, whether he graduated high school, did not know his work history or whether he was employed at the time of his death, and did not know whether he had any medical conditions.<br><br>**Evidence:**<br><br>Ex. H (McGowan Deposition) at pp. 33:4-35:9. | 82. |
| 83. | Ms. McGowan never relied on Foster for financial support.<br><br>**Evidence:**<br><br>Ex. H (McGowan Declaration) at pp. 39:15-19 | 83. |
| 84. | Ronell Foster Sr. did not know where Foster went to high school, whether he graduated, whether he was employed at the time of his death, or anything about his work history.<br><br>**Evidence:**<br><br>Ex. I (Foster Sr. Declaration) at pp. 59:21-62:5. | 84. |
| 85. | During the times that Foster was incarcerated, Ronell Foster Sr. visited him, "not often," and would not speak with him on the phone.<br><br>**Evidence:**<br><br>Ex. I (Foster Sr. Declaration) at pp. 64:20-65:13. | 85. |
| 86. | Ronell Foster Sr. never relied on Foster for money.<br><br>**Evidence:**<br><br>Ex. I (Foster Sr. Declaration) at pp. 66:3-5. | 86. |

1         .

2

3    Dated:  July 10, 2020                    ANGELO, KILDAY & KILDUFF

4                                                 */s/ Derick E. Konz*
5                                         By:_____
6                                              DERICK E. KONZ.
                                              Attorney for Defendant RYAN
7                                              McMAHON

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT RYAN McMAHON'S STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT