BRUCE A. KILDAY, S.B. #66415
  Email: bkilday@akk-law.com
DERICK E. KONZ, S.B. #286902
  Email: dkonz@akk-law.com
**ANGELO, KILDAY & KILDUFF, LLP**
Attorneys at Law
601 University Avenue, Suite 150
Sacramento, CA  95825
Telephone: (916) 564-6100
Telecopier: (916) 564-6263

Attorneys for Defendant RYAN McMAHON

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| I.F., by and through her guardian ad litem SHASTA SKINNER, individually and as successor-in-interest to Decedent RONELL FOSTER; et al., <br><br> Plaintiffs, <br><br> vs. <br><br> CITY OF VALLEJO, a municipal corporation; et al., <br><br> Defendants. | Case No.: 2:18-cv-00673-JAM-CKD <br><br> **DEFENDANT RYAN McMAHON'S RESPONSE TO PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED FACTS** <br><br> **Date:**   **August 25, 2020** <br> **Time:**   **1:30 p.m.** <br> **Crtrm:**   **6 (14th Floor)** <br><br> **Honorable John A. Mendez** |

Defendant RYAN McMAHON (hereafter "Defendant") hereby submits this response to Plaintiff's Separate Statement of Facts in support of Plaintiff's MSJ (ECF No. 57-21):

| PLAINTIFF'S UNDISPUTED FACTS AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 1. On February 13, 2018, at 7:40 P.M., Defendant Vallejo Police Officer Ryan McMahon first saw Decedent Ronell Foster, Jr. riding his bicycle in a circle at the intersection of Capitol Street and Sonoma Boulevard in Vallejo, CA. <br><br> **Evidence:** Declaration of Patrick Buelna [Buelna Decl., Ex. 1 – Deposition | 1. Undisputed that Foster was riding in a circle at the time and location, but he was also riding in an out of traffic and disrupting traffic. <br><br> **Evidence:** <br><br> McMahon Depo at pp. 107-108. |

| PLAINTIFF'S UNDISPUTED FACTS AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| Transcript of Ryan McMahon [McMahon Depo"], at pp.107-108 | |
| 2.   Defendant McMahon decided to briefly stop Ronell and educate him on bicycle safety, but had no plans to arrest him.<br><br>**Evidence:**  McMahon Depo, pp. 110-11. | 2.  Undisputed that Ofc. McMahon decided to stop Foster, but the testimony is that Ofc. McMahon had not yet decided whether he was going to issue him a citation or arrest him – "how that stop was going to go, whether he was going to get a citation or further, I didn't know because I hadn't contacted him at that point."<br><br>**Evidence:**<br>McMahon Depo at pp. 110-11. |
| 3.   Defendant McMahon activated his lights and siren, then put his spotlight on Ronell, but did not broadcast to dispatch he was making a traffic stop.<br><br>**Evidence:**  McMahon Depo, p. 113. | 3.  Undisputed. |
| 4.   Defendant McMahon could not remember why he did not inform dispatch of the traffic stop.<br><br>**Evidence:**  McMahon Depo, 114. | 4.  Undisputed that, two years after the incident, Ofc. McMahon could not recall. |
| 5.   According to Defendant, Ronell looked at him and took off northbound on Sonoma Blvd and McMahon activated his full lights and siren.<br><br>**Evidence:** (Id.) | 5.  Undisputed. |
| 6.   Then Ronell got off the street, stopped on the sidewalk and turned around to face Defendant McMahon.<br><br>**Evidence:** McMahon Depo. 120. | 6.  Undisputed. |
| 7.   Ronell stood with his bike between his legs, in a bladed stance, and looking at Defendant.<br><br>**Evidence:**  McMahon Depo. 115, 117. | 7.  Undisputed. |
| 8.   Ofc. McMahon stopped his car approximately 15 feet from Ronell. | 8.  Undisputed. |

| PLAINTIFF'S UNDISPUTED FACTS AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| **Evidence:** McMahon Depo .118. | |
| 9. Defendant McMahon introduced himself, informed Ronell that he had stopped him for "erratic driving patterns…and to come over and sit in front of [his] car." **Evidence:** McMahon Depo, 118-119. | 9. Undisputed. |
| 10. Ronell replied, "Man, don't – stop messing with me" and rode away on his bike. **Evidence:** (Id.) | 10. Disputed in regard to whether Foster said these exact words. The testimony is that Foster "said something to the effect of 'Man, don't – stop messing with me.'" Undisputed otherwise. |
| 11. Defendant McMahon got back in his car and began chasing Ronell in his vehicle. **Evidence:** McMahon Depo. 122 | 11. Undisputed. |
| 12. Defendant McMahon did not turn on his body camera when he first encountered Ronell, and did not turn on his body camera when he pursued Ronell in his vehicle. **Evidence:** McMahon Depo, 125. However, Defendant McMahon was trained that he should activate his body camera for traffic stops, traffic violations, when the initial contal [sic] becomes adversarial and any situation that would require a recording or where the contact may lead to use of force. **Evidence:** McMahon Depo, 83-84. | 12. Undisputed. |
| 13. Defendant informed dispatch for the first time that he was chasing a guy on a bike "just for traffic". **Evidence:** Buelna Decl., **Ex. 2** – Dispatch Radio, at 00:00-00:22. | 13. Undisputed that this was Ofc. McMahon's first transmission. He stated, "guy on a bicycle running from me. I'm on Florida Street heading westbound. He just cut through toward Marin. It's for traffic. We are on Marin." **Evidence:** Buelna Decl., **Ex. 2** – Dispatch Radio, at 00:00-00:22. |
| 14. Defendant McMahon gave no further updates to dispatch until after he shot Ronell Foster three times in the back and once in the back of the head, killing him. **Evidence:** Dispatch Radio, at 00:22-01:04; Buelna Decl., Ex.3 – Coroner's Report, pp.3-4. | 14. Undisputed that no other dispatch transmissions went through until after the shooting, although Ofc. McMahon attempted to update dispatch. See Defendant's SUF No. 25. Disputed that Foster was shot three times in the back and once in the back of the head. The |

-3-
DEFENDANT RYAN McMAHON'S RESPONSE TO PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED FACTS

| PLAINTIFF'S UNDISPUTED FACTS AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
|  | Autopsy Report that Plaintiff cites reports that GSW No. 4 was a fatal wound to the head with an entry wound at the "superior left parietal scalp at a point 7.5 cm above the right ear." GSW Nos. 5 and 6 are reported to have been non-fatal and entered the back near the lower left shoulder and mid right back.<br><br>**Evidence:** Dispatch Radio, at 00:22-01:04; Buelna Decl., Ex.3 – Coroner's Report, pp.3-4. |
| 15. At deposition, Defendant added that he was chasing Ronell for a Cal. Pen. Code § 148 misdemeanor violation of obstructing and delaying, because he asked Ronell to come and sit in front of his car.<br>**Evidence:** McMahon Depo, 123-124. | 15. Disputed. Defendant admits McMahon believed Foster violated Penal Code 148, but McMahon does not state that the sole basis for that belief was "because he asked Ronell to come and sit in front of his car." The basis for the Penal Code 148 violation was Mr. Foster's flight, which obstructed and delayed the investigation.<br><br>**Evidence:** McMahon Depo, 123-124. |
| 16. Defendant McMahon chased Ronell with his car until Ronell crashed his bicycle.<br>**Evidence:** McMahon Depo, 134-135. | 16. Disputed that there is any evidence of a causal link. Undisputed otherwise. |
| 17. Defendant stopped his car and got out with his flashlight.<br>**Evidence:** McMahon Depo, 137 | 17. Undisputed. |
| 18. Ronell crossed the street running and Defendant claimed to see him reaching for his waistband with both of his hands.<br>**Evidence:** McMahon Depo 139-140 | 18. Undisputed. Ofc. McMahon did see Foster reaching in his waistband with both hands. |
| 19. Defendant also added that he was concerned Ronell was armed because he was concealing the right side of his body behind the van earlier.<br>**Evidence:** McMahon Depo, 124 | 19. Undisputed. |
| 20. However, immediately after Defendant McMahon shot and killed Ronell, McMahon's fellow officers asked if Ronell had a gun, Defendant McMahon replied, "No." | 20. Undisputed, but incomplete. Immediately, after saying, "No" while out of breath, McMahon says, "I didn't search him all the way. We were fighting." |

-4-
DEFENDANT RYAN McMAHON'S RESPONSE TO PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED FACTS

| PLAINTIFF'S UNDISPUTED FACTS AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| **Evidence:** Buelna Decl., **Ex. 17** – McMahon Body Worn Camera, at 2:40-2:45 | **Evidence:** Buelna Decl., **Ex. 17** – McMahon Body Worn Camera, at 2:40-2:50. |
| 21. Defendant McMahon was trained that Vallejo Police Department discourages foot pursuits, especially when alone and into isolated areas; rather, officers should consider alternatives (such as containment and waiting for back up); and, terminating the foot pursuit altogether if the pursuit increases the safety risk to the officer or public.<br><br>**Evidence:** McMahon Depo, 90-93 | 21. Disputed. There is no testimony that Vallejo Police Department "discourages foot pursuits." Undisputed that department policies require that officers consider several factors including the balancing of safety concerns.<br><br>**Evidence:** McMahon Depo, 90-93. |
| 22. Defendant was also trained that when in a foot pursuit alone that he should not attempt to overtake and confront the suspect; but rather, he should keep the suspect in sight and wait for other officers.<br><br>**Evidence:** McMahon Depo, 94 | 22. Incomplete. Ofc. McMahon testified that the department has a guideline that *when practical* an officer should not attempt to overtake or confront a suspect alone.<br><br>**Evidence:** McMahon Depo, 94 |
| 23. Finally Defendant was trained that he must provide constant updates to dispatch about the foot pursuit (including location and direction of travel, the reason for the pursuit, the suspected crime, and whether or not the suspect may be armed) so that the on-duty sergeant can make a determination as to whether or not the pursuit should be terminated.<br><br>**Evidence:** Id. | 23. Disputed. The UMF misstates Vallejo Police Department Policy 427 and Ofc. McMahon's testimony regarding foot pursuits. The policy does not require "constant updates."<br><br>**Evidence:** McMahon Depo, 95:1-5 |
| 24. Defendant McMahon chased Ronell down the street alone, and pulled out his taser.<br><br>**Evidence:** McMahon Depo, 144 | 24. Undisputed. |
| 25. Despite the fact, Defendant was trained that he ***should not use*** his taser against an individual merely for fleeing (McMahon Depo, 72), when Defendant McMahon was 10-15 feet behind Ronell he decided to tase him in the back without any verbal warning.<br><br>**Evidence:** McMahon Depo, 145-147 | 25. Disputed that Foster was "merely" fleeing. There was probable cause to detain him for criminal activity. Undisputed that McMahon was 10-15 feet behind Foster when he deployed the Taser. Undisputed that Ofc. McMahon did not give a Taser warning, but he had given several prior warnings to stop.<br><br>**Evidence:** McMahon Depo, 145-147 |

| PLAINTIFF'S UNDISPUTED FACTS AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 26. Ronell kept running, but turned left. (McMahon Depo, 149-150). Ronell went down a narrow walkway between 415 Carolina Street, and Defendant McMahon followed him.<br><br>**Evidence:** McMahon Depo, 151 | 26. Undisputed. |
| 27. Despite his training, Defendant McMahon did not update dispatch of the foot pursuit and responding officers of his alleged concern that Ronell may have a firearm.<br><br>**Evidence:** McMahon Depo, 158. | 27. Disputed that this implies a policy violation. Undisputed that Ofc. McMahon was unable to transmit an update to dispatch, although, he tried. See Defendant's SUF No. 25. |
| 28. Although Defendant McMahon was trained to immediately inform fellow officers when he suspected someone may be armed, Defendant did not radio dispatch again until Ronell was dead.<br><br>**Evidence:** McMahon Depo, 97-98 | 28. Disputed that Ofc. McMahon was trained to *always* immediately inform fellow officers when a suspect is armed. His testimony is that every situation is different, it depends on the circumstances, and that updates should be provided when it is safe to do so.<br><br>**Evidence:** McMahon Depo, 97-98 |
| 29. Defendant McMahon caught up and pushed Ronell down the stairs in the alley.<br><br>**Evidence:** McMahon Depo, 158-159 | 29. Undisputed, but to clarify, Ofc. McMahon testified that he pushed Foster back to the ground, not down the stairs, but as a result Foster fell down 2-3 stairs.<br><br>**Evidence:** McMahon Depo, 158-159 |
| 30. Ronell fell down the stairs into the courtyard area where Defendant McMahon eventually shot him in the back and back of the head murdering him.<br><br>**Evidence:** McMahon Depo 160-161. | 30. "Murdered" is a legal conclusion, not a fact, and is denied. Ofc. McMahon acted in self-defense. |
| 31. Ronell landed facedown on his chest, and Defendant McMahon straddled Ronell's back.<br><br>**Evidence:** McMahon Depo 161-162. | 31. Undisputed. |
| 32. Defendant had a flashlight in his hands and told Ronell to stop resisting, that he was under arrest, to put his hands above his head and not reach for his waistband<br><br>**Evidence:** McMahon Depo, 162 | 32. Undisputed. |
| 33. Defendant McMahon testified that | 33. Undisputed. |

| PLAINTIFF'S UNDISPUTED FACTS AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| Ronell was "[t]rying to roll, roll away from me and get up."<br><br>**Evidence:** McMahon Depo, 162:8-10 | |
| 34. So Defendant put one knee on Ronell's lower back, and drew his taser.<br><br>**Evidence:** McMahon Depo, 162 | 34. Undisputed. |
| 35. Ronell did not try to punch, kick or strike Defendant. (McMahon Depo, 162-163). Up to that point, everything Ronell had done was simply trying to get away from Defendant.<br><br>**Evidence:** Id. | 35. Disputed. Misstates the testimony that Foster affirmatively did not try to punch, kick or strike or that he was only (or "simply") trying to get away.<br>Ofc. McMahon testified:<br>Q. At that point had he tried to strike you at all?<br>A. You know, we were wrestling. I don't know if he was trying to hit me or not, but I know he was trying to get up. And just in that commotion I don't remember an actual strike.<br>Q. It seems like he was trying to get away from you rather than attack you at that point, right?<br>A. No. It seemed like he was trying to get up. I don't know what he was trying to do, but he was definitely not listening to my commands and trying to get up.<br>Q. Everything up to that point had been him trying to get away from you, right?<br>A. Yes.<br><br>**Evidence:** McMahon Depo, 162-163. |
| 36. Defendant noticed one of the taser probes from the earlier deployment was lodged in Ronell's back so he attempted to complete the circuit and tased Ronell in the back without any verbal warning.<br><br>**Evidence:** McMahon Depo, 163-164 | 36. Undisputed that Ofc. McMahon attempted to Tase Foster. Disputed that he gave no verbal warning. He testified that they were wrestling and he was telling him "stop resisting, keep your hands above your head, you're under arrest."<br><br>**Evidence:** McMahon Depo, 163-164 |
| 37. Ronell did not scream or say stop, but continued simply trying to get away from Defendant.<br><br>**Evidence:** McMahon Depo, 166. | 37. Undisputed that Foster did not scream or say stop in response to the Taser, and continued to try and *get up*. Disputed that he was "simply trying to *get away*" – misstates the testimony.<br><br>**Evidence:** McMahon Depo, 166 |

| PLAINTIFF'S UNDISPUTED FACTS AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 38. Defendant stood up, removed the cartridge from the taser, and began pressing the front end of the taser into Ronell's arm, side and chest repeatedly tasing him in drive stun mode<br><br>**Evidence:** McMahon Depo, 166-167. | 38. Undisputed that Ofc. McMahon tried to Tase Foster in drive stun mode. Disputed that he actually Tased him. Ofc. McMahon testified that Foster "kept knocking the Taser away" and that the Taser was not effective.<br><br>**Evidence:** McMahon Depo, 166-167 |
| 39. Defendant still did not turn on his body-worn camera, or radio anyone for back up<br><br>**Evidence:** McMahon Depo 167. | 39. Undisputed. |
| 40. After being tased several times, Defendant testified that Ronell asked, "What the fuck, man? What are you doing?"<br><br>**Evidence:** McMahon Depo. 168. | 40. Disputed. Misstates the testimony. Ofc. McMahon testified that "He said something. During my interview I believe I said that, what you just stated, but I also stated that I wasn't exactly sure what he said. But he was upset."<br><br>McMahon Depo. 168. |
| 41. Ronell still had not attempted to punch him or even threaten him, even while Defendant repeatedly tased him, then Defendant started beating Ronell with his flashlight.<br><br>**Evidence:** McMahon Depo, 168-169 | 41. Disputed. The UMF is argumentative and misstates deposition testimony claiming McMahon was "beating" Mr. Foster. McMahon never testified that he was "beating" Mr. Foster. He testified he struck Mr. Foster to gain compliance.<br><br>Disputed that Foster never threatened Ofc. McMahon; the testimony is that Foster didn't *say* anything threatening, but "his demeanor and actions at that time were threatening."<br><br>**Evidence:** McMahon Depo, 168-169 |
| 42. Defendant admitted that when he decided to beat Ronell with his flashlight the level of threat Ronell presented did not merit deadly force.<br><br>**Evidence:** McMahon Depo, 175:2-5. | 42. Disputed that Ofc. McMahon "beat" Foster. See response to UMF 41. Undisputed that Foster did not pose an imminent threat of death or serious physical harm until he ripped the flashlight out of Ofc. McMahon's hand and raised in a position to strike. |
| 43. The flashlight Defendant used to beat Ronell was a MagLite, approximately a foot long and made of metal.<br><br>**Evidence:** McMahon Depo, 175; Ex 4 – | 43. Disputed that Ofc. McMahon "beat" Foster. See response to UMF 41. Otherwise, undisputed. |

| PLAINTIFF'S UNDISPUTED FACTS AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| Flashlight Photo | |
| 44. Defendant McMahon only recalled striking Ronell in the clavicle and arm (McMahon Depo 177:11-14), but the medical examiner and police practices expert Jack Ryan noted a large wound to the front of Ronell's head – consistent with being struck with a MagLite.<br><br>**Evidence:** Buelna Decl., Coroner's Report, p. 3; Ex. 5 – Head Wound Photo; Ex. 6 – Police Practices Expert Jack Ryan's Rule 26 Report [Ryan Report], p. 50, ¶ 161. | 44. Undisputed that Foster had a laceration on his head. Disputed that Ofc. McMahon struck Foster in the head with his flashlight. There is no cited evidence to support this. Plaintiff's expert (Ryan) concludes that "in my experience, the injury I see in the photograph is consistent with my experience in reviewing or being involved in a head strike with a flashlight," however Mr. Ryan is not a pathologist and has no medical background and is therefore unqualified to render this opinion. Moreover, even he does not conclude that the laceration was caused by the flashlight. Additionally, the Coroner's report does not state that the laceration was caused by a flashlight strike. There is no evidence to support this fact. It is pure speculation that the laceration was caused by a flashlight strike and not something else.<br><br>**Evidence:** Buelna Decl., Coroner's Report, p. 3; Ex. 5 – Head Wound Photo; Ex. 6 – Police Practices Expert Jack Ryan's Rule 26 Report [Ryan Report], p. 50, ¶ 161. |
| 45. Defendant McMahon repeatedly beat Ronell with the flashlight while he was on the ground.<br><br>**Evidence:** McMahon Depo, 177-178 | 45. Disputed and misstates the testimony. See response to UMF 41 regarding use of the term "beat." Ofc. McMahon testified that he struck Foster in the arm and clavicle to gain compliance and to get Foster to stop resisting.<br><br>**Evidence:** McMahon Depo, 177-178. |
| 46. Defendant McMahon testified that he intended to continue to beat Ronell with the flashlight until he gained compliance and stopped resisting. (McMahon Depo, 179). Defendant did not warn Ronell that he would continue to beat him with a flashlight unless he complied.<br><br>**Evidence:** McMahon Depo, 180. | 46. Disputed and misstates the testimony. See response to UMF 41 regarding use of the term "beat." Ofc. McMahon testified that he struck Foster in the arm and clavicle to gain compliance and to get Foster to stop resisting. Ofc. McMahon testified that he used this as a pain compliance technique. He testified that he repeatedly told Foster to stop resisting and put his hands up. Undisputed that Ofc. McMahon did not specifically tell Foster that he was going to strike him with the flashlight before doing so. |

| PLAINTIFF'S UNDISPUTED FACTS AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
|  | **Evidence:** McMahon Depo, 178-180. |
| 47.   Defendant still did not make any calls over the radio for backup either.<br><br>**Evidence:** McMahon Depo, 180-181. | 47. Undisputed that Ofc. McMahon did not transmit a radio broadcast or request backup while he was physically engaged with Foster. |
| 48.   Defendant McMahon raised the MagLite in the air again to bring it down on Ronell and beat him further, but Ronell grasped the MagLite as it came toward him.<br><br>**Evidence:** McMahon Depo, 182. | 48. Disputed and misstates the testimony. See response to UMF 41 regarding use of the term "beat."<br>Undisputed that Foster grabbed the flashlight from Ofc. McMahon and ripped it out of his hand.<br><br>**Evidence:** McMahon Depo, 180-183. |
| 49.   Defendant McMahon testified Ronell ripped the flashlight from him, then got up off the ground, "and was lifting the light up to like come down and…hit [him] with it."<br><br>**Evidence:** McMahon Depo, 182-183. | 49. Undisputed |
| 50.   Defendant clarified the reasons he shot Ronell testifying: Ronell had the "the flashlight above his head" (McMahon Depo, 188:7-10); and, Ronell "was coming at [him] with the flashlight."<br><br>**Evidence:** McMahon Depo, 189:18-25. | 50. Undisputed. |
| 51.   They were "[p]oint blank range", arm's length apart.<br><br>**Evidence:** McMahon Depo, 190. | 51. Undisputed, but to clarify, Ofc. McMahon testified that they were "approximately" arm's length apart.<br><br>**Evidence:** McMahon Depo, 190. |
| 52.   Defendant McMahon described the moments before he shot: "Ronell had a bladed stance. His right foot was in front of his left and he was coming – After he grabbed my light, it was simultaneous, he was coming up and doing this motion…He's starting to come towards me with the flashlight in like a hammer first type motion."<br><br>**Evidence:** McMahon Depo, 191:10-192:4. | 52. Undisputed. |
| 53.   At video deposition, Defendant McMahon acted out Ronell's actions that caused him to kill him. | 53. Undisputed. |

-10-
DEFENDANT RYAN McMAHON'S RESPONSE TO PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED FACTS

| PLAINTIFF'S UNDISPUTED FACTS AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| **Evidence:** Ex. 7 – Still Frame Photos from Video Deposition at 31:18, 31:19; 31:20; Ex. 8 – McMahon Video Deposition 31:15-31:20; Ryan Report, pp. 55-59). | |
| 54.  In response, Defendant testified that he pulled out his gun and remembered "shooting from [his] hip and punch[ed] out" with the gun. **Evidence:** McMahon Depo, 184. McMahon recalled that his first shot struck Ronell "[s]omewhere in his front. I know because *I know we were facing each other.*" **Evidence:** McMahon Depo, 186 (emphasis added). | 54. Undisputed. |
| 55.  Defendant reaffirmed later, that Ronell was attacking him, face to face, with a flashlight.<br><br>**Evidence:**  McMahon Depo, 201:3-7 | 55. Undisputed. |
| 56.  Defendant fired seven shots killing Ronell. (Id.) No gun or any other weapon was ever found on Ronell.<br><br>**Evidence:**  McMahon Depo, 216:14-16 | 56. Undisputed that Ofc. McMahon fired seven shots and that Foster was killed.  Undisputed that a gun was not found on Foster.<br><br>Disputed that "no weapon was ever found on Ronell" because the flashlight was on the ground near his body where he had dropped it.<br><br>**Evidence:**  McMahon Depo, 214:18-20, 216:14-16. |
| 57.  Defendant McMahon did not turn on his body-worn camera until after he shot and killed Ronell.<br><br>**Evidence:**   **Ex. 9** – Stutchman Rule 26 Report; **Ex. 10 –** Stutchman Enhanced McMahon BWC, at 00:00-00:35 | 57. Undisputed. |
| 58.  The video evidence clearly contradicted Defendant's account and definitively proved that Defendant McMahon murdered Ronell, as Ronell attempted to flee, and Ronell never attacked Defendant; instead, Defendant cowardly shot Ronell in his back and back of his head when he fled Defendant's excessive force. | 58. This is not a fact, it is opinion of plaintiff's counsel that carries no weight in an statement of undisputed material facts.  This opinion is not even an opinion stated by plaintiff's expert (Stuchman) in the Rule 26 report plaintiff cites as evidence.  The actual evidence (the body-worn camera, Ofc. McMahon's testimony, and the testimony of civilian witness Wolfe; see |

| PLAINTIFF'S UNDISPUTED FACTS AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| **Evidence:** Ex. 9 – Stutchman Rule 26 Report; Ex. 10 – Stutchman Enhanced McMahon BWC, at 00:00-00:30 | Defendant's motion for summary judgment) does not support this interpretation. There is no evidence that Foster never attacked Ofc. McMahon. There is evidence, and plaintiff even admits this in this motion, that Foster grabbed the flashlight from Ofc. McMahon, rose up from the ground, and raised the flashlight within approximately arm's length as if to strike Ofc. McMahon when Ofc. McMahon responded with deadly force. See plaintiff's UMFs 49-55. |
| 59.  Defendant's body-worn camera showed Defendant McMahon tasing and beating Ronell with a flashlight splitting open his head, while Ronell laid on his back, on the ground.<br><br>**Evidence:** McMahon Enhanced BWC, 00:00-00:20. | 59. Disputed.  This is an opinion of Plaintiff's counsel, not evidence.  The camera footage shows that Ofc. McMahon attempted to Tase Foster, that they were wrestling and grappling, that Foster grabbed the flashlight, stood and raised it, and that Ofc. McMahon responded with deadly force.  There is no evidence of "beating" or that the flashlight "split open" Foster's head. |
| 60.  Then, Defendant McMahon moved to strike Ronell with the flashlight again and Ronell blocked him, grabbed the flashlight, and rolled away from Defendant McMahon and started to get up to run away.<br><br>**Evidence:** McMahon Enhanced BWC, 00:20-00:30; Ryan Report, 59-68; Ex. 11 - Stutchman Still Frames 702-918 | 60. Undisputed that Ofc. McMahon attempted to strike Foster with the flashlight, that Foster blocked it and grabbed the flashlight. Undisputed that Foster was getting up. Disputed that Foster "started to get up *to run away*." There is no evidence to support this assumption that Foster was standing to run away.  Ultimately, he may have if he would have been successful in first striking Ofc. McMahon with the flashlight and incapacitating him. |
| 61.  Ronell was on his hands and feet and, Defendant McMahon had his firearm aimed at Ronnell's back.<br><br>**Evidence:**  Id. | 61. Disputed that Ofc. McMahon had his firearm aimed at Foster's back. The body worn camera footage, Ofc. McMahon's testimony and the testimony of civilian witness Mr. Wolfe all show/describe the same thing: Ofc. McMahon drew his firearm and fired when Foster was facing him and Foster turned to his right and fell *as* the rounds were being fired, within approximately 2 seconds.  That is the evidence.  There is no evidence to support plaintiff's interpretation. |

| PLAINTIFF'S UNDISPUTED FACTS AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | **Evidence:** See Ofc. McMahon's declaration, deposition testimony of Mr. Wolfe, and the body worn camera footage submitted in support of Ofc. McMahon's summary judgment motion. |
| 62. As Ronell stood up to run away, Ronell dropped the flashlight and Defendant McMahon had his firearm aimed at Ronell's back.<br>**Evidence:** Id. | 62. Disputed. The evidence does not support this fact. There is no evidence that Foster stood up "to run away" or that Ofc. McMahon "aimed" at Foster's back. There is evidence that Foster had the flashlight in his hand when Ofc. McMahon drew his weapon and fired, and that Foster dropped the flashlight and fell to his right side as Ofc. McMahon was firing.<br><br>**Evidence**: See evidence in support of fact numbers 52-63 to Ofc. McMahon's summary judgment motion. |
| 63. After Ronell had dropped the flashlight and was turning and beginning to run away, Defendant McMahon shot Ronell seven times in his side, back and back of his head.<br>**Evidence:** Id. | 63. Disputed. The evidence does not support this fact. There is no evidence that Foster dropped the flashlight and was turning to run away before Ofc. McMahon fired. There is evidence that Foster had the flashlight in his hand and was facing Ofc. McMahon at the moment when Ofc. McMahon drew his weapon and fired. There is evidence that Foster dropped the flashlight and fell to his right side as Ofc. McMahon was firing.<br><br>**Evidence**: See evidence in support of fact numbers 52-63 to Ofc. McMahon's summary judgment motion. |
| 64. Ronell collapsed into the bushes from the seven shots in the direction that he was moving (i.e. away from Defendant McMahon).<br>**Evidence:** Id. | 64. Disputed that Foster was moving away from Ofc. McMahon when Ofc. McMahon drew his weapon and fired the first shot. There is no evidence to support this fact. There is evidence that Foster had the flashlight in his hand and was facing Ofc. McMahon at the moment when Ofc. McMahon drew his weapon and fired. There is evidence that Foster dropped the flashlight and fell to his right side as Ofc. McMahon was firing. |

| | PLAINTIFF'S UNDISPUTED FACTS AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | **Evidence**: See evidence in support of fact numbers 52-63 to Ofc. McMahon's summary judgment motion. |
| | 65.    The medical examiner determined that there were seven gunshot wounds. Ronell suffered a fatal gunshot wound with an entry in the back, left side of Ronell's head, passed through the brain and stopped in his right temple, moved left to right, back to front, which is consistent with being shot while turned away from Defendant and crouched/falling.<br>**Evidence:   Ex. 3, 12, 18** | 65. Undisputed that Foster sustained seven gunshot wounds.  Undisputed regarding the path of the wound as described by the pathologist.<br><br>Undisputed that this is consistent with Ofc. McMahon's description of the shooting, that "as Foster rose with the flashlight, raised it, and turned to strike from approximately an arm's length away, Ofc. McMahon drew his pistol with his right hand toward Foster's front and fired seven shots in one continuous rapid burst as Foster turned and fell to his right side on the ground."<br><br>**Evidence**: See evidence in support of fact numbers 56 to Ofc. McMahon's summary judgment motion. |
| | 66.    Ronell suffered a fatal gunshot wound with an entry into Ronell's left mid back and exiting from his chest that moved left to right, back to front and up, which is consistent with being shot while turned away from Defendant and crouched/falling.<br>**Evidence:   Ex. 3, 13, 18** | 66. Undisputed that Foster sustained seven gunshot wounds.  Undisputed regarding the path of the wound as described by the pathologist.<br><br>Undisputed that this is consistent with Ofc. McMahon's description of the shooting, that "as Foster rose with the flashlight, raised it, and turned to strike from approximately an arm's length away, Ofc. McMahon drew his pistol with his right hand toward Foster's front and fired seven shots in one continuous rapid burst as Foster turned and fell to his right side on the ground."<br><br>**Evidence**: See evidence in support of fact numbers 56 to Ofc. McMahon's summary judgment motion. |
| | 67.    Ronell suffered a fatal gunshot wound | 67. Undisputed that Foster sustained seven |

| | PLAINTIFF'S UNDISPUTED FACTS AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | with an entry in Ronell's left mid back (same entry as prior gunshot wound) and exiting from his chest that moved left right, back to front, and up, which is consistent with being shot while turned away from Defendant and crouched/falling.<br><br>**Evidence:   Ex. 3, 13, 18** | gunshot wounds.  Undisputed regarding the path of the wound as described by the pathologist.<br><br>Undisputed that this is consistent with Ofc. McMahon's description of the shooting, that "as Foster rose with the flashlight, raised it, and turned to strike from approximately an arm's length away, Ofc. McMahon drew his pistol with his right hand toward Foster's front and fired seven shots in one continuous rapid burst as Foster turned and fell to his right side on the ground."<br><br>**Evidence**: See evidence in support of fact numbers 56 to Ofc. McMahon's summary judgment motion. |
| | 68.    Ronell suffered a fatal gunshot wound with an entry into Ronell's left side, that moved left to right and up, stopping his lungs which is consistent with being shot while turned away from Defendant and crouched/falling<br><br>**Evidence:   Ex. 3, 14, 18** | 68. Undisputed that Foster sustained seven gunshot wounds.  Undisputed regarding the path of the wound as described by the pathologist.<br><br>Undisputed that this is consistent with Ofc. McMahon's description of the shooting, that "as Foster rose with the flashlight, raised it, and turned to strike from approximately an arm's length away, Ofc. McMahon drew his pistol with his right hand toward Foster's front and fired seven shots in one continuous rapid burst as Foster turned and fell to his right side on the ground."<br><br>**Evidence**: See evidence in support of fact numbers 56 to Ofc. McMahon's summary judgment motion. |
| | 69.    Ronell suffered a non-fatal gunshow wound with an entry into the back of ronell's left shoulder and stopped in his clavicle that moved back to front and up which is consistent with being shot while turned away from defendant and crouched/falling. | 69. Undisputed that Foster sustained seven gunshot wounds.  Undisputed regarding the path of the wound as described by the pathologist.<br><br>Undisputed that this is consistent with Ofc. |

| PLAINTIFF'S UNDISPUTED FACTS AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| **Evidence:   Ex. 3, 13, 18**. | McMahon's description of the shooting, that "as Foster rose with the flashlight, raised it, and turned to strike from approximately an arm's length away, Ofc. McMahon drew his pistol with his right hand toward Foster's front and fired seven shots in one continuous rapid burst as Foster turned and fell to his right side on the ground." <br><br> **Evidence**: See evidence in support of fact numbers 56 to Ofc. McMahon's summary judgment motion. |
| 70.   Ronell suffered a non fatal gunshot wound with an entry into Ronell's right mid back that exited the right top of his shoulder and moved back to front and up which is consistent with being shot while turned away from Defendant and crouched/falling; finally, a non fatal gun shot wound with an entry into Ronell's left forearm that exited his left elbow and moved right to left, back to front and up which is consistent with being shot while turned away from Defendant and on the ground or crouched/falling. <br> **Evidence:   Ex. 3, 15, 18** | 70. Undisputed that Foster sustained seven gunshot wounds.  Undisputed regarding the path of the wound as described by the pathologist. <br><br> Undisputed that this is consistent with Ofc. McMahon's description of the shooting, that "as Foster rose with the flashlight, raised it, and turned to strike from approximately an arm's length away, Ofc. McMahon drew his pistol with his right hand toward Foster's front and fired seven shots in one continuous rapid burst as Foster turned and fell to his right side on the ground." <br><br> **Evidence**: See evidence in support of fact numbers 56 to Ofc. McMahon's summary judgment motion. |
| 71.   Ronell suffered a non fatal gun shot wound with an entry into Ronell's left forearm that exited his left elbow and moved right to left, back to front and up which is consistent with being shot while turned away from Defendant and on the ground or crouched/falling. <br> **Evidence:   Ex. 3, 16, 18** | 71. Undisputed that Foster sustained seven gunshot wounds.  Undisputed regarding the path of the wound as described by the pathologist. <br><br> Undisputed that this is consistent with Ofc. McMahon's description of the shooting, that "as Foster rose with the flashlight, raised it, and turned to strike from approximately an arm's length away, Ofc. McMahon drew his pistol with his right hand toward Foster's front and |

| PLAINTIFF'S UNDISPUTED FACTS AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
|  | fired seven shots in one continuous rapid burst as Foster turned and fell to his right side on the ground." **Evidence**: See evidence in support of fact numbers 56 to Ofc. McMahon's summary judgment motion. |

Dated: July 9, 2020

ANGELO, KILDAY & KILDUFF, LLP

*/s/ Derick E. Konz*
By:_____
    DERICK E. KONZ.
    Attorney for Defendant RYAN McMAHON

179775